J. W McComb, Plaintiff in Error, vs. Edwin Bell, Defendant in Error.

The assessment of the expense of grading a street in the City of St. Paul, upon the lots fronting upon said street, under Section five of Chapter seven of the Charter of that City, is an exercise of the taxing power of the government, and not the right of *eminent domain*.

In order to make the lots fronting upon a street chargeable with the expense of grading, every act which the Statutes require the city officials to do, must be fully performed, or an assessment will be void. In bringing the suit on a certificate, the Plaintiff assumes the *onus* of proving that each pre-requisite step was taken by the proper officers; and, under our practice, it is equally essential that the same facts should be *pleaded*, to constitute a cause of action.

That portion of the act above referred to, which allows the holder of such a certificate to prosecute the owner of the lot by civil action, as the Statute stands, is invalid; and an action cannot be maintained under it at any time.

This action was brought to recover the amount of a street certificate, issued by the street commissioners of the City of Saint Paul, to a contractor, who had graded the street bordering upon a lot owned by Defendant, under contract with the said commissioners, under Sec. 5, Chap. 7 of the Charter of the City of Saint Paul. The Statute designs giving the contractor two remedies under the contract: 1st, by having the amount due him assessed upon the lots, and collected for his use, as other taxes are collected; 2d, by a personal action against the owner of the lots. The latter course was adopted by the Plaintiff below.

His complaint sets forth that a majority and quorum of the street commissioners of the Third Ward, (naming them,) in their capacity as such commissioners, by virtue of "An Act

to incorporate the City of Saint Paul," &c., approved March 4th, 1857, and the acts amendatory thereof, approved February 29th, 1856, and May 22d, 1857, contracted with the Plaintiff for the grading of St. Anthony street, &c., whereby the Plaintiff agreed to do said work according to certain terms and conditions specified, for which the said commissioners agreed to give the Plaintiff after the completion thereof, certificates in pursuance of Sec. 10, Chap. 7, of said Act, and the amendments thereof.

That the Plaintiff completed the work prior to the 17th of September, 1857, when the said commissioners executed and signed certain certificates in his favor, for the portion of the work done under the said contract, chargeable to lots or lands, which certificates were on the 18th day of said month, duly countersigned by the Comptroller of said City, and delivered to Plaintiff by said commissioners.

That among the same was one which stated that certain lots owned by the Defendant, naming them, were chargeable with their proper proportion of the cost and expense of such work done under said contract, (giving the amount for which each lot was chargeable.)

That the same were unpaid, and that the Plaintiff was the owner thereof.

The Defendant demurred to the complaint. The grounds of the demurrer will fully appear in the points made by counsel in the Supreme Court.

The District Court sustained the demurrer, and the Defendant reviews the judgment thereon, by Writ of Error.

The following are the points presented by the Counsel for the Plaintiff in Error:

*First.* This action rests upon the validity of certain provisions of the Act of the Legislative Assembly of the late Territory of Minnesota incorporating the City of St. Paul, approved March 4th, 1854, and acts amendatory thereof. *Sess. Laws* 1854, *pp.* 13–42 ; *Sess. Laws* 1855, *p.* 141, *sec.* 2 ; *Sess. Laws* 1856, *pp.* 32–6; *Sess. Laws* 1857, *Extra Sess.*, *p.* 72. See especially Chap. VII. ("City Improvements") page 29, and

amendments thereof; Chap. 27, Secs. 15–17, page 35 of Session Laws of 1856; and also Extra Session of 1857, page 72.'

*Second.* The issue in this case is an issue of law raised by Defendant's demurrer to the Plaintiff's complaint.

The only material ground specified by Defendant is the "Sixth," which controverts not the validity of the certificates upon which Plaintiff's action is brought, but the right to collect these certificates upon an action against the owners of the property against which the certificates are issued.

It is respectfully submitted that the demurrer does not fairly put at issue the legality of the certificates themselves, but only the right at action thereupon; and hence, that the constitutionality of the provisions of the law under which the public work was contracted for and performed, and the certificates therefor were issued, is not really drawn in question by the issue made by the Defendant.   Yet, as there seems to be really no other material question in the case, excepting that of the constitutionality of the provisions of the law referred to—inasmuch as the other questions, including the one presented by Defendant's demurrer of the right of action upon the certificates, are necessarily mere corollaries of the question of the validity of the provisions authorizing the work and the assessments therefor—it is proposed to show that the provisions of the City Charter authorizing the grading of the streets to be done, and the assessments therefor to be made and apportioned in the manner specified by said provisions, are entirely valid and constitutional.

*Third.* The provisions under consideration, it will be remembered, are not provisions adopted by the city corporation, but they are the provisions of the *City Charter itself*, establishing the city corporation, which were passed by the Legislative Assembly of the late Territory.  These provisions are entirely within the scope of the ordinary legislative powers of the late Territory of Minnesota.  These powers were limited and restrained only by the Constitution of the United States and the Organic Act creating the Territory, and the other acts of Congress especially relating thereto.

The provisions under consideration infringe none of these.

They come clearly within the usual and necessary and well-defined exercise of the Supreme Legislative power.

This cannot now be fairly regarded as an open question:

I. The Legislature had the right to authorize and provide for the grading of the streets of the City of St. Paul. No authority and no reasons need to be added in support of this proposition; nor is it understood that this proposition is controverted.

The objection in the present instance is, not to the power of the lawmaker to authorize *the work itself*, but to his power to authorize the particular *mode of assessing or taxing* for the expense and cost of the work.

II. The Legislature had the right to assess the expense and cost of the grading of streets in St. Paul exclusively upon the class of *inhabitants whose lands were benefitted by the work.*

1. Private property may constitutionally be taken for public use in two modes, viz: by *taxation*, and by *right of eminent domain.*

These two rights rest substantially on the same foundation. Compensation is made when private property is taken in either way. When it is taken by taxation, the taxpayer receives, or is supposed to receive, his just compensation in the protection which government affords to his life, liberty and property, and in the increased value of his possessions; when private property is taken by right of eminent domain, the owner receives special compensation therefor.

*Taxation* exacts money or services from individuals as their respective shares of contribution to the public burthen; by *right of eminent domain*, private property is taken for public use as so much beyond the owner's share of contribution to the public burthen, and for this reason special compensation is awarded.

2. The right exercised in the present case is not that of *eminent domain* but that of *taxation.* It will not be disputed that the grading in question is a public work, the cost of which might rightfully have been raised by general taxation upon all the taxable inhabitants of St. Paul if the Legislature had so provided. Instead of doing so, however, the Legislature chose, in the exercise of its just and legitimate discretion, to shift the burthen

of taxation and impose it exclusively upon the part or class of the taxable inhabitants whose lands were benefitted by the work, or whose lands the Legislature deemed to be thereby benefitted.

3. If, therefore, there be any valid objection to the tax under consideration, that objection must lie to the *mode of apportioning* the assessment, and not to the tax itself, because the object for which the assessment was made is one for which taxation by a different rule of apportionment would confessedly be valid and constitutional. But there can be no objection to the *mode of apportionment.* It was obviously adopted in pursuance of the well-established and most just and equitable maxim of the common law, "He who receives the advantage ought to sustain the burthen;" and to avoid the manifest injustice of general taxation for a manifest local object. It is supported by the highest authority, reason and expediency. *The People vs. Mayor &c. of Brooklyn,* 4 *Comstock (N. Y.)* 420.

4. The power of legislation, and consequently of taxation, operates on all the persons and property belonging to the body politic. However absolute the right of an individual may be it is still in the nature of that right that it must bear a portion of the public burthens, and *that portion must be determined by the Legislature.* This vital power may be abused, but the interest, wisdom, and justice of the representative body, and its relations with its constituents, furnish the only security against unjust and excessive taxation, as well as against unwise legislation. *Ch. Jus. Marshall, in Providence Bank vs. Billings,* 4 *Peters,* 563; *McCulloch vs. State of Maryland,* 4 *Wheaton,* 428–30.

It is not the fit province of the judicial department to inquire what degree of taxation is the legitimate use, and what degree may amount to the abuse of this power. *Ib.* 4 *Wheat.* 430. Therefore, the power of taxation and of apportioning taxation, or of assigning to each individual his share of the burthen, *is vested exclusively in the Legislature,* unless the power is limited or restrained by some constitutional provision. The power of *taxing* and the power of *apportioning* taxation are identical and inseparable. Taxes cannot be levied without apportionment; and the power of apportionment is there-

fore unlimited, unless it be restrained as a part of the power of taxation. *The People vs. Mayor &c. of Brooklyn*, 4 *Com.* (*N. Y.*) 426–7. There was no such restraint or limitation upon the Territorial Legislature of Minnesota; and there is not generally in the States of the Union any such restraint or limitation, nor has such limitation or restraint been placed upon the supreme legislative power of other countries.

It is competent for the Legislature to apportion the tax generally upon all taxable persons within its jurisdiction, or within a certain district or local division; or it may apportion the tax, according to the benefit which each taxpayer is supposed to receive from the object on which the tax is expended. The one or the other method of apportionment may be more equitable, according to the exigencies of the case. *Of this*, however, *the Legislature is the sole and exclusive judge.* It is wholly a matter of *legislative discretion* which method shall be adopted, and it *is not* at all a matter for *judicial* inquisition or review. *People vs. Mayor &c. of Brooklyn*, 4 *Comstock* (*N. Y.*) 427–32.

5. It has been customary in the States of this Union and in England to tax for local works and to assess and apportion the tax upon the lands affected thereby. *People vs. Mayor &c. of Brooklyn*, 4 *Comstock* (*N. Y.*) 438, and authorities there cited.

III. It must be borne in mind that the question before the Court is not a question of *erroneous assessment;* that is, of *error* in *levying* or apportioning the *assessment* under the statute. The complaint avers every thing to have been done duly and pursuant to the statute, and this of course is admitted by Defendant's demurrer.

The question raised is, as to the validity of the provisions of the statute itself, and not of the proceedings under that statute. If there has been mistake or error in the proceedings under the statute, that question may be raised in the proper manner.

IV. The power of the Legislature to make a tax bear a lien upon real estate, it is presumed, is not drawn in question by the issue made in the present case. It is moreover too well established to need the citation of authorities in its support.

See generally in support of the foregoing propositions the

*People vs. Mayor, &c., of Brooklyn,* 4 *Comstock* (*N. Y.*) *pp.* 420, 442, also points of counsel in the same case, "appendix" 4 *Comstock, pp.* 607, 615.

*Fourth.* Assuming the competency of the Legislature to authorize the work and the assessment and apportionment therefor, in the case under consideration; its power to authorize and provide for the payment of these assessments to, and their collection by the contractor or contractors doing the work, is but a necessary corrollary and a legitimate incident of the former exercise of power.

It is usual for the Legislature to authorize the municipal corporation to pay for such public works out of its common treasury, and then to reimburse itself by collecting the assessments which have been made therefor.

But surely if the assessment itself and the mode of the apportionment thereof, is wholly a matter of Legislative discretion, *a fortiori,* is the peculiar *mode of collecting* the assessments a matter entirely within the discretion of the Legislature. The mode of collecting the assessments and compensating the contractors for the performance of the public work, was evidently adopted in the supposed interest of the public, and with the view of facilitating necessary and important public improvements. It was probably supposed that it would likewise favor the tax payer himself. The Legislature may have *erred* in the exercise of their judgment in this respect, but that error, if made, is not subject to be reviewed by this Court.

Furthermore, if the Legislature was competent to authorize the compensation of contractors for public works by the direct payment to, and collection by them of the assessments made for such public works, surely it could give those contractors an action,—a remedy to enforce the right thus conferred. This was barely the exercise of an ordinary duty of the Legislature. Indeed it might well be contended that the contractors would have had, and did have, a right of action to enforce the payment of these certificates or evidences of assessment, without the special statute conferring this right.

No one will question the competency of the Legislature to have granted to the City of St. Paul itself a personal action to

enforce the collection of its taxes, or the particular tax in question. Legislatures usually provide much more summary remedies for the collection of taxes than that afforded by an ordinary civil action.

If the Legislature could have conferred on the City of Saint Paul the right of a civil action to collect the assessment in question, where is to be found the limitation or restraint upon its powers which could prevent it from giving such a right of action directly to the party to whom the assessment really belonged, and to whom it was made payable, and by whom it was collectable.

2. That it was the clear intention of the Legislature to give a personal action upon the certificates of assessments in question, against the owners of the property assessed, and that such an action has actually been given, is obvious from the mere inspection of the statute and the amendments. *Sec.* 10, *Chap.* 7, *Sess. Laws,* 1854, *p.* 31; *amended Sess. Laws,* 1856, *Chap.* 27, *Sec.* 17, *p.* 35; *and* 1857 *Extra Sess. p.* 72.

Prior to the amendment, the holder of these certificates, if the same were not duly paid, depended upon the City for their collection by the same process as other taxes on real estate were collected by the City. The amendment left the provisions of the previous statute entire, but added immediately after the clause which follows the word "collected," the words, "or by civil action at the suit of a *bona fide* holder of said certificates against the owner or owners of said lots or lands."

In interpreting and construing this section and its amendments it is the duty of the Court to consider:

1st. What was the supposed mischief for which the prior law did not provide?

2d. What is the remedy which the Legislature intended to provide by the new law?

Obviously the mischief under the former law was, that the holder of the certificates had, or was supposed to have, no direct remedy to enforce his right, and the Legislature undertook by the new law to confer such a remedy in the form of a civil action against the owners of the property assessed. The terms of the Statute are unambiguous and leave nothing open to conjecture. If it were otherwise, the above construc-

McComb *v.* Bell.

tion is abundantly aided and confirmed by the cardinal maxims of statutory construction:—

1st.   Statutes must be so construed as to give effect to them if possible.

Any other construction of the amendment in question than the above would completely nullify it, and indeed would obliterate it from the statute book.

2d.   The provision under consideration is *remedial* and therefore must receive a *liberal* construction.

3d.   The fundamental rule of interpreting and construing statutes, is to ascertain and give effect to the *intention* of the Legislature.

*The intention of the Legislature must always control in the construction of a statute.*   2 *Cranch*, *R.* 10; *ibid.*, 358; 5 *T. R.*, 449; 3 *Cowen*, 89; 3 *Scam. R.* 153; *Bre. R.* 243; *ibid,* 249; 12 *John. R.* 176. 15 *ibid,* 358; 4 *Cushing*, *R.* 314; 1 *Mis. R.* 147; 2 *H. and J.* 69; *ibid* 167; 2 *Pet. R.* 662; 1 *ibid,* 64; 21 *Wend. R.* 211; 1 *Green R.* 240.

Now who doubts the *intention* of the Legislature, in the case under consideration, to give the holder of the certificates the right of action thereon, against the owners of the property upon which the assessment evidenced by the certificates was made? *Rev. Stat., p.* 330, *Sec.* 1.

Having settled what was the mischief under the former law, and what is the remedy therefor provided by the new, it is the duty and province of the Court *always to make such construction as shall suppress the mischief, and advance the remedy. Smith's Com.* 660; 3 *Co. R.* 7.

*Fifth.   Appropos* of the whole question before the Court, attention is respectfully called to the following well established maxims of the common law:

1.   Courts have nothing to do with the *propriety* or *expediency* of a statute.   3 *Scam. R.* 153; 8 *John. R.* 51.

2.   There is no difference in the rules of construction applicable to public and private statutes.   9 *Porter, R.* 266.

3.   Where the law is plain and unambiguous, whether expressed in general or more limited terms, there is no room left for construction, and a resort to extrinsic circumstances is not permitted for the purpose of ascertaining the meaning.   *Ibid.*

4. In such cases the legislative will must be *obeyed* by the Courts. 2 *Cranch R.* 358; 2 *Gilm. R.* 1; 3 *A. K. Mar. R.* 489; 2 *Pet. R.* 662; 1 *Pick. R.* 45; *ibid* 256.

5. The *intention* of the Legislature must always control in the construction of a statute. See authorities cited above. *Head* IV, 2, 3d.

6. In the construction of statutes it is a rule of universal application, that effect must be given to the words used by the Legislature, if there be no uncertainty or ambiguity in their meaning. 4 *McLean R.* 463.

Mr Justice Coleridge in a recent case, holds the following language :

"It is, in my opinion, so important for the Court in construing modern statutes, to act upon the principle of giving full effect to their language, and of declining to mould that language in order to meet either an alleged inconvenience, or an alleged equity, upon doubtful evidence of intention, that nothing will induce me to withdraw a case from the operation of a section which is within its words, but clear and unambiguous evidence that so to do is to fulfill the general intent of the statute, and also that to adhere to the literal interpretation is to decide inconsistently with other and over-ruling provisions of the same statute."

7. It is the duty of Courts to put such a construction upon statutes, if possible, as to uphold and carry them into effect. 10 *Geo. R.* 190.

8. Such a construction as will defeat the purpose of the law must never be given to it. 9 *Whea. R.* 81.

9. The rules and maxims of interpretation and construction laid down by the sages of the common law, must be adhered to. 3 *Scam. R.* 157; 7 *Cranch R.* 52; 2 *U. S. Cond.* 412; 1 *Kent Com.* 462; 10 *Johns. R.* 470.

The following are the points and authorities presented by the counsel for Defendant in Error :

The Complaint does not state facts sufficient to constitute a cause of action, in that—

*First.* It is based upon a statute, so called, (*Laws* 1857, *Ex. Session, p.* 72, *sec.* 1) which was not passed by any legal

*Legislature.   Organic Act, sec.* 4; *Rev. Stat. chap.* 3, *sec.* 1; *Organic Act, sec.* 2.

*Second.* The statute (so called) upon which the complaint is based is unconstitutional and null.   *Organic Act, sec.* 6; *Const. U. S., am'd'ts to Art. V.;* 6 *Barbour* (*S. C.*) 209, and cases cited; 9 *ib.* 535, and cases cited; 9 *Wendall,* 244; 11 *ib.* 154; 1 *Barbour,* 286; *Kent's Com. vol* 2, *secs.* 331–2; 3 *Barb.* 275; 4 *Hill,* 147; 5 *Dana,* 28; 11 *Johnson,* 77; 3 *Wendell,* 263; 4 *Hill,* 76; 7 *ib.* 9.

*Third.* Admitting the constitutionality of the statute, the complaint does not show that the Plaintiff has so complied with it as to have a right of action (4 *Sandford,* 667; *Striker vs. Kelly,* 2 *Denio,* 329), in that—

1. It does not show any *notice* to Defendant whatever, of the grading, or of the existence of the certificates prior to the commencement of this action.   *Laws* 1854, *chap.* 7, *p.* 31, *sec.* 10; *Laws* 1856, *chap.* 27, *p.* 35, *sec.* 10; *Laws* 1857, *Ex. Sess. chap.* 17, *p.* 72, *sec.* 1; 6 *Wendell,* 634; 2 *Denio,* 329; 3 *Barbour* (*S. C.*) 282.

2. It does not show that the contents of the certificates conformed to the law (so called.)   *Laws* 1854, *p.* 31, *sec.* 10; *Laws* 1856, *p.* 36, *sec.* 17; *Laws* 1857, *Ex. Sess. p.* 72, *sec.* 1.

3. It does not show the amount or value of the work done in front of Defendant's lots.   *Laws* 1854, *p.* 30, *sec.* 6, not amended.

4. It does not show the countersigning of the contract by Comptroller, without which both contract and certificates are void.   *Laws* 1856, *p.* 35, *sec.* 10.

*Fourth.* The complaint in the action does not show that the amount claimed *has gone into the assessment roll,* which it must do before the action of this personal description can be maintained.   See carefully *Extra Session Laws* 1857, *p.* 72, *sec.* 1.

The complaint shows that it has not gone into the assessment roll.   (See Complaint, for time of issuing certificates; Summons, for time of commencement of action; Revised Statutes, page 76, for time of making out assessment roll.)

*Fifth.* The amount of interest claimed—30 per cent.—is

illegal, the claim being based upon no *contract* to which Defendant is party or privy.

LORENZO ALLIS, Counsel for Plaintiff in Error.

SANBORN, FRENCH & LUND, Counsel for Defendant in Error.

*By the Court*—FLANDRAU J.   The grant of power to the Legislature by the sixth Section of the Organic Act of Minnesota, conferred upon that body as ample powers over all subjects as compatible with the Territorial existence as is possessed by a State, including the power of taxation in all its aspects. The assessment of the expense of grading a street in the City of St. Paul upon the lots fronting upon such street under Section 5, Chapter 7, of the Charter of that City is an exercise of the taxing power of the government and not the right of eminent domain. This can hardly be considered an open question since the decision in the case of *People ex rel, Griffin vs. The Mayor, &c. of Brooklyn, 4 Coms.* 419.   The reasoning of the Court in that case is conclusive to my mind and removes all doubts about the power conflicting with the provisions of the Constitution prohibiting the taking of private property for public use without compensation :   I shall not attempt to fortify the position by reasons, as the doctrine is too well settled.

In order to make the lots fronting upon a street chargeable with the expense of grading it, every act which the statute requires the city officials to do, must be fully performed or an assessment will be void.   " Every Statute in derogation of the common law to divest the title of one and transfer it to another must be strictly pursued or the title will not pass.   This is a mere naked power in the corporation, and its due execution is not made out by intendment ; it must be proved.   It is not a case for presuming that public officers have done their duty, but what they have in fact done must be shown," *Per Bronson J. Sharp vs. Spier, 4 Hill,* 86, which was an action of ejectment, the defendant relying upon a title under a tax sale for the making of a well and pump in the City of Brooklyn.   The onus of proof rests on the purchasers under such sales, and " he must show, step by step, that every thing has

been done which the statute makes essential to the due execution of the power." *Id.*

The numerous cases cited by Justice Bronson fully sustain the doctrine he lays down.

Now what are the Street Commissioners of St. Paul to do before they can grade a street in that City, and charge the expense upon the property fronting upon it? After determining that the grade is to be made, they are to estimate the whole expense of it, and also the proportion to be assessed and charged to each lot, and the number of cubic yards to be filled in or excavated in front of each lot, and file the estimate with the City Comptroller, for the inspection of the parties interested. They are then to give notice to the owners or occupants of the land fronting upon the street by advertisement in one of the city papers of ten days requiring them to do the work mentioned in the notice within a reasonable time, and if the party owning the property does not do the work, then the Commissioners can contract for it. The making the estimate, and giving notice are very important conditions precedent to the letting of the work by the Commissioners, and an omission to do either would vitiate the assessment upon the lands of the expense of the work, and all subsequent proceedings under it. *Sess. Laws*, 1854, *p.* 30, *Sec. 6.*

The Statute designs giving the contractor two remedies under his contract for the labor performed. First, by having the amount due him assessed upon the lots, and collected for his use as other taxes are collected. Secondly, by a personal action against the owner of the lands. *Same Act Sec.* 10, *as amended by Sess. Laws of* 1856, *p.* 35, *Sec.* 17; *and again by Sess. Laws of* 1857, *extra session, p.* 72, *Sec.* 1. If he adopts the first method, and the collection of the tax is resisted, or title under the tax sale is brought in question at any time it will be necessary to prove that the conditions precedent were all performed, or in other words that the estimate was made and filed, and the notice given before the contract was let, and that the contract was properly countersigned by the Comptroller and all other acts fully performed or the tax cannot be sustained. Now if the contractor determine to pursue the remedy by personal action against the owner under the Stat-

ute, he takes the onus of establishing the same facts, and must prove that each step was taken before he can recover, and if these facts are necessary to be proved to make out his cause of action against the owner, then under our system of pleading it is essential that they should be pleaded.

The complaint in this action does not show these acts to have been done by the street Commissioners of St. Paul before they let the contract, nor that the contract was countersigned by the Comptroller, and consequently contains no cause of action against the Defendant. This alone would suffice to dispose of the case, but as the Court below decided it upon other points, and as several other questions are clearly presented by the demurrer, in consideration of the importance of the questions, we will pass upon them all.

After the contract for work of this kind has been properly let by the street Commissioners and the work completed, the Commissioners are to give to the contractor a certificate under their "grants" (evidently meaning "hands") stating the amount of work done by the contractor, which means the amount of excavating or filling in, represented by cubic yards, as in the estimate required by Section 6, or such other standard as is adopted in the contract, and adapted to the nature of the work, and the value of such work in dollars and cents.

The estimate and the statements in the certificate are checks upon each other for the protection of the owner of the land. The certificate should also contain the description of each lot or parcel of land upon which this expense is chargeable and the proportion chargeable to each, both in amount and value, in the manner adopted in the original estimate. There should be but one certificate for each contract. The owner of the land has until the making out of the next annual assessment Roll after the issuing of the certificate, to pay the amount charged against his land, then if the same is not paid, the contractor can have the amount which by said certificate is apportioned against each lot, assessed against the same on the Roll, and collected for his use and benefit as other taxes are collected, by virtue of the City Charter.

The Court below held that the amendment of 1857, allowing the contractor or the endorsee of the certificate to sue the own-

McComb *v.* Bell.

er in a civil action at his option, was invalid, because it was unequal and unjust in its operation, allowing different remedies against citizens for the same character of claim, and making the selection of them dependent upon the caprice of individuals without any official responsibility.

The effect of the amendment was not overstated by the Court below: under it two persons owning adjoining lots could be treated in a very unequal manner. The lands of one could be assessed and sold with all the advantages to the owner of redemption under the tax sale, which would be a proceeding entirely *in rem*, while his neighbor could be prosecuted in a civil action, and all his property real and personal made subject to the judgment and execution, and if real estate was sold to satisfy the judgment, he would have but the time to redeem allowed on such sales: it is useless to enumerate all the opportunities for oppression and injustice that such a power placed in private hands would allow, as I am clearly of the opinion that it is not in the power of the legislature to say that taxes shall be collected of one citizen by one process, and of another by one entirely different, and it follows *a fortiori* that what it could not do directly it cannot make dependent upon the will of a private citizen.

I think the clause allowing the holder of the certificate to prosecute the owner of the land by civil action, as the statute stands, is invalid, and an action cannot be maintained under it at any time.

The judgment of the Court below is affirmed.