EMORY A. WELLER, Plaintiff in Error, *vs.* THE CITY OF ST. PAUL, Defendant in Error.

### ERROR TO THE DISTRICT COURT OF RAMSEY COUNTY.

*Section* 26 *of Chapter* 8, *Session Laws of* 1854, *page* 37,which provides that "no person shall be permitted to institute any proceedings to set aside any assessment or special tax hereafter levied or assessed upon any lot or tract of land, or to set aside any deed executed in consequence of the non-payment of such taxes, and of the sale of the premises therefor, unless such person shall first pay or tender to the proper party, or deposit for his use with the Treasurer, the amount of all state, county and city taxes that may remain unpaid upon such lot or tract, together with the interest and charges thereon,"—is inconsistent with *Sec.* 8, *of Art.* 1, *of the Constitution of the State,* which provides that every person "ought to obtain justice freely and without purchase."

*Sec.* 5, *of Chap.* 6, *of the Charter of the City of Saint Paul,* (*Session Laws of* 1854, *p.* 30,) provides that the cost and expense of "grading, gravelling, planking or paving streets and alleys to the center thereof, shall be chargeable to and payable by the lots fronting on such street or alley." Certain grading was done upon one of the streets in said city, and the cost of said work "was assessed upon and charged to the lots fronting upon the work done, specifically, lot by lot, the work done opposite or fronting on each specified lot being assessed upon and made chargeable to such lot alone." *Held* that the apportionment was unauthorized, and the assessment thereunder was void.

The amendment of the Charter of the City of Saint Paul (*Session Laws of* 1856, *p.* 35) which omits the giving of certain notices and proceedings thereunder, which were provided for by the *latter* part of *Sec.* 6, *Chap.* 7, of the Charter of 1854, does not make the duties imposed by the *first* part of the Section, (to wit, making an estimate of the cost of the proposed improvement, and filing the same, &c.) any the less imperative, nor the neglect of those duties less fatal to the validity of the assessment.

The provision of the Charter of said City (*Laws of* 1854, *Chap.* 7, *Sec.* 2, *p.* 29,) providing that "any person deeming himself aggrieved by an act of the Board of Street Commissioners, may at any time appeal to the Common Council," &c., is a mere privilege given to the party aggrieved, and is not exclusive of other remedies.

The clause in the Charter providing that "no error or informality of the officers entrusted with making assessments, not affecting the substantial justice of the tax itself, shall vitiate or in anywise affect the validity of the tax or assessment," cannot protect the corporation from the consequences of the errors or carelessness of its officers, or prevent parties prejudiced thereby from obtaining the redress to which they would otherwise be entitled.

The owner of land cannot sustain an action to have an instrument purporting to affect it, cancelled as a cloud upon his title, where such instrument is void on its face, or where it is defective for want of preliminary proceedings, which the party under it would be bound to show. But where the instrument is made presumptive evidence that such proceedings were had, the action lies, if the instrument be in fact void for a defect in the proceedings. And where a municipal corporation sold the Plaintiff's land for the payment of an alleged assessment which had never been laid, and was about to execute to the purchaser a conveyance which by the statute was made *prima facie* evidence that a valid assessment was made, the owner can restrain the corporation from executing the conveyance, have the sale declared void, and the certificate thereof, issued to the purchaser, cancelled._*Scott vs. Onderdonk et. al.* 4 *Kernan,* 9, *approved.*

Points and authorities of Plaintiff in Error :

*First.*—It fully appears from the allegations of the complaint, that the provisions of the statute authorizing certificates like the one described in the complaint to be issued in certain cases, were not complied with in any respect. Hence the certificate was void, and the assessment of the same as a tax upon the land or lot must therefore be also void. *See Fo-*

lio 14 and 19, (inclusive,) of case: McComb vs. Bell, 2 Minn. Rep. 307; Philbrook vs. Kennebeck, 5 Shep. 196; Wellington vs. Fiske, 11 Shep. 386.

Second.—The Defendant claims an interest in the real estate described in the complaint. See Folios 8 and 9 of case; and the Plaintiff is the owner and in possession. See Folio 3 of case. An action is authorized by statute in such a case. Public Statutes, p. 595, Chap. 64, Sec. 1.

A Plaintiff who alleges that he is the owner of the premises in fee, concerning which he claims relief, shows himself in a better position for relief, than a Plaintiff who simply alleges that he is in possession.

Third—The complaint clearly shows that the Plaintiff's property has been lessened and impaired in value, his title embarrassed, and a sale of his real estate prevented, by the illegal and unauthorized acts of the Defendant. An injury and wrong is clearly shown, a remedy follows, of course; and it can make no difference whether illegal acts are done by officers of the law or otherwise, the same rule prevails.

Fourth.—Nor does it matter under the code practice, in what form the facts come before the Court. It is only necessary that the facts should show a wrong or injury done to, or sustained by the Plaintiff from the acts of the Defendant, and proper relief asked, and the Court in such a case will adjudge the proper relief. Van Santvoord's Pleadings, pp. 213 and 214.

Fifth.—Proceedings authorized by and in pursuance of a statute to divest title to real estate, although so irregular as to create no legal rights, and to divest no title in law, still create such a cloud and incumbrance upon the title, as Courts of Equity will remove, and relieve against. Bayerke vs. Cohan, 1 McAll. C. C. (Cal.) 112; Lovering vs. Downer, Ib. 360; Calius vs. Barkdale, 23 Geo. 602; Saltmarsh vs. Smith, 32 Alabama, 404; Shell vs. Martin, 19 Ark. 139; Scott vs. Onderdonk, et. al., 4 Kern 9; Gay vs. Henance, 5 Cal. 73.

Sixth.—The only case where a lien for the amount of the assessment will stand and remain, although the tax title fail, is where the assessment is legal and regular, and the proceedings

in making sale irregular. *Camo vs. Robertson*, 9 *N. Hamp.* 524.

Points and Authorities of Defendants in Error.

*First.*—The tender, payment or deposit of the amount of all taxes that may remain unpaid upon any lot or tract of land is made a *condition precedent* to the commencement of any proceedings to set aside an assessment upon such lot or tract. *See City Charter of* 1854, *Chap.* 8, *Sec.* 26; *Session Laws of* 1854, *p.* 37.

The complaint does not allege the performance of this condition, which is fatal on demurrer.

*Second.*—The Street Commissioners constituted a tribunal from which the City Charter has provided a special remedy by appeal to the Common Council. *Sec.* 2 *Chap.* 7, *Charter of* 1854; *Session Laws of* 1854, *p.* 29.

Where the statute has provided a special remedy, parties must pursue that remedy in the first instance. *The Mayor of Brooklyn vs. Meserole* 26 *Wend.* 139; *Mooers vs. Smedley et. als.* 6 *Johns, Ch. R.* 28; *Murray vs. Graham*, 6 *Paige* 622.

*Third.*—The proceedings of the Street Commissioners may be brought before a higher Court for review by *Certiorari* that their legality may be passed upon. *Sec.* 5, *Chap.* 56, *p.* 475 *Public Statutes of Minnesota; Wilson, vs. the Mayor of New York*, 1 *Abb. Pr. R.* 4 *and cases cited; Le Roy et. als. vs. the Mayor, &c.* 4 *Johns. Ch. R.* 353; *Bouton vs. the City of Brooklyn*, 15 *Barb. S. C. R.* 375; *Coles vs. the Trustees of Williamsburgh*, 10 *Wend.* 659.

*Fourth.*—The law under which these assessments were made provides that "no error or informality of the officers intrusted with the same not affecting the substantial justice of the tax itself shall vitiate or in any wise affect the validity of the tax or assessment." *City Charter of* 1854, *Chap.* 8, *Sec.* 10; *Sess. Laws of* 1854, *pp.* 31 *and* 35.

1. It is not alleged in the complaint that the errors and informalities complained of *do* in any way affect the substantial justice of the assessment, or that the Plaintiff was damaged by reason of the same.

2. The notice to do the work which it is complained was

not given, was required by *Sec.* 6, *Chap.* 7 *of the City Charter of* 1854 (*Sess. Laws of* 1854. *p.* 30,) but was *not* required by that section as amended in 1856. *See Sess. Laws of* 1856, *p.* 35, *Sec.* 15.

3.  The assessments were properly apportioned to the lots on the street benefited.

The fair construction and theory of *Sec.* 5, *Chap.* 7, *of act of* 1854, is that the expenses of street grading, must be apportioned among the lots fronting on the streets which are *benefited* thereby, proceeding upon the principle that " he who receives the advantage ought to sustain the burthen." *The People vs. the Mayor, &c. of Brooklyn*, 4 *Comst.* 419 ; *Scovil vs. the City of Cleveland*, 1 *Ohio State R.* 135.

*Fifth.*—The complaint does not state facts sufficient to constitute a cause of action cognizable by a Court of Equity.

1.  In that it does not allege, nor does it appear therefrom that the Plaintiff has not an adequate remedy at law.

Nor that this action will prevent a multiplicity of suits.

Nor that the Plaintiff or his freehold will suffer irreparable damage unless he obtains the relief prayed. *Willard's Equity Jurisprudence*, *p.* 328 ; *Fonblanques Equity*, *Book* 1, *Chap.* 1, *Sec.* 2. (*note.*)

2.  In that the complaint does not allege, nor does it appear therefrom, that the proceedings sought to be set aside or the instruments sought to be cancelled are regular and valid on their face, so as to cloud the Plaintiff's title, but the contrary appears.

The authorities in support of this position are numerous and arise in cases quite analagous and similar to the one at bar. Among them are : *The Mayor, &c. of Brooklyn vs. Meserole*, 26 *Wend.* 132 ; *Van Doren vs. the Mayor, &c. of New York*, 9 *Paige* 388 ; *Patterson vs. the corporation of New York*, 1 *Paige* 114 ; *Wiggin vs. the Mayor of New York*, 9 *Paige* 16 ; *Murray vs. Graham*, 6 *Paige* 622 ; *Mooers vs. Smedley et. als.* 6 *Johns, Ch. R.* 28 ; *Livingston vs. Hollenback*, 4 *Barb. S. C. R.* 10 ; *Van Resselaer vs. Kidd*, 4 *Barb. S. C. R*, 17 ; *Bouton vs. the City of Brooklyn*, 15 *Barb. S. C. R.* 375 ; *John McCoy vs. Chilicothe*, 3 *Ohio* 370 ; *Le Roy et. als. vs. the Mayor, &c. of New York*, 4 *Johns. Ch. R.* 352 ; *Heywood*

*vs. the City of Buffalo*, 4 *Kernan* 534; *Thatcher vs. Dusenbury*, 9 *How Pr. R.* 32.

3.   In that the Plaintiff's grounds of complaint are merely *technical* and not *meritorious.*

It appears that a street was graded in front of Plaintiff's lots; that the Plaintiff stood by and made no objection to the same; that he is chargable by law with his proportion of the expense of the same, and it does not appear that his property was not benefited by the improvement to the full amount of the assessment made against it.

But the Plaintiff appeals to a Court of Equity to relieve him from paying the certificates now in the hands of a holder for value, and to throw the burthen of the improvement made for the especial benefit of his property on some one else.

The principle that " he who seeks equity must do equity" together with Chap. 8, Sec. 10 and Chap. 7, Sec. 10 of the City Charter of 1854, mitigating the strictness of the old rule governing taxation, require that the Plaintiff should show that the justice of the assessment has been affected by the irregularities complained of, before asking the intervention of a Court of Equity to relieve him from his share of the expense of improving his property.

But if these irregularities *do* render the assessment invalid, they appear on the face of the proceedings of the Street Commissioners and of the certificates sought to be set aside and cancelled, and, therefore, according to the authorities above cited are not a cloud on Plaintiffs' title which a Court of Equity will interfere to remove.

*Sixth.*—The Plaintiff in Error can avail himself of all his rights on account of the irregularities complained of, in his defense to an action brought to recover possession of his lots by virtue of the assessments.

*Seventh.*—He can pay the amount of the certificates under protest, to the city, and then bring his action to recover it back if the assessments were not valid.

SANBORN & LUND, Attorneys for Plaintiff in error.

SAMUEL R. BOND, City Attorney, H. J. HORN, Counsel.

*By the Court*—ATWATER J. The plaintiff in Error brought an action in the Court below, for the purpose of cancelling a certain tax certificate, issued by the defendant in error, for work done in grading certain streets in the city of Saint Paul, and also asks to have the sale of a certain lot, (of which he claims to be owner) sold for the tax mentioned in said certificate, set aside and declared null and void. The complaint alleges, that on the first day of June, 1857, the Street Commissioners of said city, entered into a contract with one J. W. McComb, for the grading of St. Anthony Street and Dayton Avenue, in St. Paul, that the work was performed in pursuance of the contract, that a certificate was issued and delivered to the contractor for the work done, for the sum of $126.20 against lot 9, in block 61, in Rice & Irvine's Addition to St. Paul, which said certificate purported to charge said lot for the aforesaid sum, and to create a lien upon said lot for said sum with interest at the rate of thirty per cent per annum, from the date of said certificate, to wit, from September 17th, 1857, and to make said certificate collectable out of said lot. The complaint also alleged, that said certificate had been incorporated into the city tax list, in pursuance of a provision in the charter to that effect, and that said lot was sold in March, 1859, to satisfy the tax, and that the Defendant became the purchaser of the same, and claims a lien thereon for the purchase money and interest. It was also alleged that the City of St. Paul was about to give a tax deed for the lot, and that the time allowed by law for redemption was about to expire and that the said certificate was a cloud upon the Plaintiff's title, and lessened and impaired the value thereof, &c. The complaint then stated various grounds on which it was claimed the certificate was unauthorized, illegal and invalid, and the sale thereunder void.

A demurrer was interposed to the complaint, which was sustained, and the Plaintiff brought a writ of error.

The Defendant in Error claims that the tender, payment, or deposit of the amount of all taxes that may remain unpaid upon any lot or tract of land is made a condition precedent to the commencement of any proceedings to set aside an assessment upon such lot. This claim is based upon *Sec. 26 of*

*Chap. 8, of Session Laws of* 1854, *p.* 37, which provides that " no person shall be permitted to institute any proceedings to set aside any assessment or special tax, hereafter levied or assessed upon any lot or tract of land, or to set aside any deed executed in consequence of the non payment of such taxes, and of the sale of the premises therefor, unless such person shall first pay or tender to the proper party, or deposit for his use with the Treasurer, the amount of all State, County, and City taxes that may remain unpaid upon such lot or tract, together with the interest and charges thereon." In the case at bar this payment or tender was not made. I do not think this provision is consistent with *Section* 8, *Article* 1 *of the Constitution.* It is therein provided that every person " ought to obtain justice freely and without purchase." The effect of the provision of the City Charter above cited, is to compel the party aggrieved to purchase the right of a status in Court, by paying not only the debt which the Defendant claims as its due, but also the debts of other municipalities, or governments, with which the Defendant has nothing to do, and in which she has no interest. The Legislature may doubtless pass laws providing for giving security for costs by suitors, but such does not appear to be either the effect or intent of this provision, and even were it so, it would be very questionable, whether the Legislature could properly grant such an extraordinary privilege, to one particular individual or corporation, in which no others participate. Nor is the provision intended to secure the debt claimed to be due the Defendant, for the land itself is held for the tax. I can conceive of no other object of this provision than to make it more onerous and difficult for persons to contest the validity of city assessments, a difficulty which, perhaps in many cases, might amount to an entire denial of justice. This object is unconscionable and unjust, and inconsistent with the provisions of the Constitution. This ground of demurrer is therefore not well taken.

*Section* 5, *of Chapter* 6, *of the Charter of the City of St. Paul* (*Sess. Laws of* 1854 *p.* 30) provides that the cost and expense of " grading, gravelling, planking or paving streets and alleys to the center thereof, shall be chargeable to and payable

13

by the lots fronting on such street or alley." The complaint alleges that the cost of this work was not so made chargeable, " but that the cost of said work was assessed upon and charged to the lots fronting upon the work done, specifically lot by lot, the work done opposite or fronting on each specified lot, being assessed upon and made chargeable to such lot alone."

It is manifest from the above that the provision of the charter which regulates the manner of assessing or apportioning the cost of the grading, has not been complied with. Instead of apportioning that cost upon all the lots fronting on the street, as required by Section 5, the cost has been assessed only upon the lots fronting on the grading done. It is contended by the counsel for the Defendant in error, that the fair construction and theory of Section 5, is, that the expenses of street grading must be apportioned among the lots fronting on the streets which are *benefited* thereby. If this were the true construction of the Section referred to, it would not aid the Defendant in Error, since there is no allegation that the cost was apportioned among the lots benefited by the grading. The theory itself may be correct, and could it be carried out in practice, might furnish a just method of apportioning the expense of grading. But however this may be, the Legislature has not adopted this principle, as the basis of apportioning the cost, at least not this alone, and therefore had it appeared from the pleading that the cost was apportioned upon the lots benefited, the apportionment would still not have been within the letter or spirit of the law. For it is manifest that in grading a street, the benefit is not necessarily confined, either to the lots fronting on that street, or on the grading actually done. In many, if not the majority of cases, lots on streets crossing the one graded, and even on neighboring parallel streets, would be greatly benefited, and often equally as much as those fronting on the street graded. But it is not pretended that any part of the expense can be assessed upon such lots. And yet we are not to suppose that the Legislature wholly ignored the idea of benefits received, in the provision requiring the expense to be chargeable to the lots fronting on the street graded. In fixing some general rule for regulating the apportionment of the expense for this work, the Legislature, in its wisdom,

adopted that specified in Section five, and it is not for the Court to say whether this rule is the best that could be adopted, or that its meaning is different from that expressed in its terms, which are clear and unambiguous. The commissioners are restricted within certain limits in apportioning this expense, and within those limits they have a certain discretion in apportioning the expense, but not such as to impose the whole expense of grading on certain lots, and exclude others fronting on the same street, since the law declares that this expense shall be chargeable to the lots, (that is, by fair construction, all the lots) fronting on the street graded.

That this language in reference to apportioning the expense for grading was used by the Legislature *ex industria*, and not accidentally and without expressing its precise intent, I think further evident from other provisions in the same Section. For in regard to the expense of sewers, a different rule is adopted. It provides that " sewers may be ordered by the Street Commissioners, and built at the *expense of the lots or parcels of land benefited thereby*"—and " where sewers are constructed through streets, no lot shall be assessed therefor except those situated in the blocks fronting on such streets," &c. Section nine of the same chapter, also provides that the expense of certain improvements therein specified shall be assessed to the lots fronting on such improvement. From all these considerations, therefore, we are forced to conclude that the manner adopted by the commissioners for apportioning the expense of this grading, was unauthorized by law, and the assessment upon the lot in question illegal and void.

Section six of Chapter seven of the same act provides that " whenever the Commissioners shall determine to make any public improvement as authorized by Sections three, four and five of this Chapter, they shall cause to be made an estimate of the whole expense thereof, and of the proportion to be assessed and charged to each lot," &c., " and such estimate shall be filed with the City Comptroller for the inspection of the parties interested." The section further provides for the giving of certain notices, and proceedings thereunder, but this last part was omitted in an amendment of the Charter in 1856. (*Sess. Laws* 1856, *p.* 35.) The complaint alleges that

no such estimate was ever made or filed with the Comptroller of said city, nor was any estimate thereof ever made or filed in any manner whatever.

In *McComb vs. Bell*, 2 *Minn.* 295, we held that "the making the estimate and giving notice are very important conditions precedent to the letting of the work by the Commissioners, and an omission to do *either* would vitiate the assessment upon the lands of the expense of the work, and all subsequent proceedings under it." I do not think the omission of the latter part of this Section by the amendment, makes the duty imposed by the first part above quoted, any the less imperative, nor the neglect of that duty less fatal to the validity of the assessment.

The Defendant in Error alleges several reasons why the Court should not entertain this action, some of which it may be proper to consider.

It is urged that the Street Commissioners constituted a tribunal from which the City Charter has provided a special remedy by appeal to the Common Council. (*Session Laws of* 1854, *Chap.* 7, *Sec.* 2, *p.* 29.) And that where the statute has provided a special remedy, parties must pursue that in the first instance. The Section above quoted provides that "any person deeming himself aggrieved by an act of the board of Street Commissioners, may, at any time, appeal to the Common Council, who shall enquire into, examine and correct the act or order complained of as shall be just and proper." The question presented under this provision is, whether the remedy here given is exclusive of all others. I do not think such is the proper construction. The terms of the act do not in themselves convey the idea, that the party aggrieved is compelled to appeal to the Common Council, as his only means of redress. It is a privilege accorded to him if he chooses to avail himself of it—he "may" appeal. If the intent of this Section is to make this appeal to the Common Council exclusive of other remedies, its effect would be to deprive the party aggrieved of a trial by jury, in a case involving the title to real estate; since there is no method provided for reviewing the action of the Common Council, and the only way of doing this suggested by the counsel for the Defendant, is by Certio-

rari to the Supreme Court. And even were it admitted that the intent of the Legislature was to restrict a party to this remedy alone, it may well be questioned whether it has succeeded in making the proper provisions for carrying such intent into effect. The amendment of *Section six Chapter seven* above referred to, leaves parties without notice of the action of the Commissioners in the premises, and we find no provision in the act requiring notice of such action to be given to the owners of lots affected by contracts and proceedings under them, and consequently this right of appeal might often prove of no practical benefit. It is true the Section provides that a party may appeal "at any time," and it may be claimed that this gives a party the right to appeal at any time after the discovery of the errors of which he complains. But the act also provides for a sale of the premises if the assessment be not paid, the giving a deed or title to the purchaser, and the statute provides that a tax deed shall be *prima facie* evidence of title. I think from these considerations, the construction placed upon this Section by the counsel for the Defendant in Error, would be productive of serious difficulties, and lead to great injustice, and cannot be entertained, unsupported by other authorities than those cited.

The objection is also raised, that the law under which these assessments were made provides that " no error or informality of the officers entrusted with the same, not affecting the substantial justice of the tax itself shall vitiate or in any wise affect the validity of the tax or assessment," and that under this provision the errors complained of in the assessment in this case are cured. The effect of this provision can be extended no further than the terms themselves justify, and these scarcely add anything to the powers inherent in Courts of justice, to protect the rights of litigants in judicial proceedings. It will scarcely be claimed that a corporation can, by a clause of this nature in its charter, protect itself from the consequences of the errors and carelessness of its officers, or prevent parties prejudiced thereby from obtaining the redress to which they would otherwise be entitled. Without this provision, Courts would not ordinarily set aside an assessment, on account of irregularities and informalities in the proceedings not affect-

ing the merits; nor with it, can they tolerate dereliction in the discharge of official duty inconsistent with the well settled principles of law and equity. As some of the errors complained of in the case at bar, do affect the substantial justice of the tax itself, the provision cannot certainly in this case, be invoked in aid of the Defendant in Error.

It is further objected that the complaint does not state facts sufficient to constitute a cause of action cognizable by a Court of equity, in that it does not appear that the instruments sought to be cancelled are regular and valid on their face so as to cloud the Plaintiff's title, but the contrary appears. Where the instruments under which title must be claimed by the adverse party are void upon their face, there would seem to be no reason for the interposition of a Court of Equity, since the instruments themselves would always furnish the evidence to defeat any claim set up under them. And had the certificate issued by the Street Commissioners been the only evidence of title to the premises, there may be some question whether this action could be sustained. But the complaint alleges that "the City of St. Paul is, by its duly authorized officers and agents about to give or cause to be given a tax deed of said premises, and that the term allowed by law for the redemption of said premises from said tax sale is about expiring," &c. This tax deed would then be the evidence of the purchaser's title, and by our statute (*Comp. Stat. p.* 242, *Sec.* 72,) such deeds are made *prima facie* evidence of title. The case of *Scott vs. Onderdonk et. al.* 4 *Kernan* 9, is entirely analagous to the present, and settles the right of the Plaintiff to maintain this action. It was there held that "the owner of land cannot sustain an action to have an instrument purporting to affect it cancelled as a cloud upon his title, where such instrument is void on its face, or where it is defective for the want of preliminary proceedings, which the party claiming under it would be bound to show. But where the instrument is made presumptive evidence that such proceedings were had, the action lies, if the instrument be in fact void for a defect in the proceedings. And that where a municipal corporation sold the Plaintiff's land for the payment of an alleged assessment which had never been laid, and was

about to execute to the purchaser a conveyance which by the statute was made *prima facie* evidence that a valid assessment was made, the owner could restrain the corporation from executing the conveyance, have the sale declared void, and the certificate thereof issued to the purchaser, cancelled." We approve of the reasoning and decision of that case, and think the Plaintiff in this action is entitled to have the certificate described in the complaint declared null and void, and that the same be delivered up to be cancelled, and that the sale of the premises thereunder be adjudged null and void.

*Emmett C. J. dissents.*

•

At the July Term, 1861, the Defendant in Error moved for a re-argument of this cause, upon grounds stated in the following opinion denying the motion, *by Atwater, Justice.*

This was a motion for re-argument made by the counsel for Defendent in Error, based upon an affadavit, setting forth in substance, that upon the previous argument of the cause, *Section 5, of Chap. 7, of the Charter of the City of St. Paul,* was read to the Court, and commented upon by counsel from the City Digest of 1856, which said City Digest contained the Charter of said city in a continuous form as it had been then amended, and did not exhibit certain Sections of said Charter as they had been originally enacted, in the original act of incorporation approved March 4, 1854, which said Sections as counsel claim, explain the true intent and meaning of said *Section 5.* That the counsel for said city did not advert on their argument or read to the Court the said last named Sections, but commented upon the construction of said *Section 5,* as it appears in said Digest, and without reference to the said other Sections, inadvertently and by an oversight, &c.

In the case of *Gallup vs. Derby & Day,* decided at the present term, we had occasion to state some of the grounds which must appear as the basis for a re-argument of a cause once decided by this Court, and in what case a re-argument would

not be permitted.   In this case, although the error referred to by the counsel in his affidavit, may have caused him to omit remarks upon the sections in the original act, in his former argument, yet the Court did in fact examine these sections, and took them into consideration in its decision of the case.   And as upon the further suggestions of the counsel upon this motion, the Court is unable to see probable cause that its construction of the statute was erroneous, the motion must be denied.