IRA BIDWELL, Appellant, *vs.* ELIAB L. WHITNEY, Respondent.

APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

When a party executes an instrument to which he has a good defence in whole or in part, if he is prosecuted upon it by the ordinary action, at law, or in equity, and by his own act he cuts off such defence, either by confessing a judgment, or giving a mortgage with a power of sale, then his only relief is by an application to the equitable side of the Court.

In an action for money had and received, to recover the surplus bid by a mortgagee upon a foreclosure by advertisement, over and above the amount actually due upon the obligation (but within the amount stipulated to be paid as a *penalty* for non-payment after maturity,) *held*—that the

mortgagor could have enjoined the sale, in equity, until the amount actually due could be ascertained, and had the mortgage cancelled, as to the balance claimed to be due in the notice of sale; or could have had other appropriate equitable relief, depending upon the condition of the parties and the securities; but the action at law will not lie.

Points and authorities of Appellant:

*First.*—The complaint contains no cause of action. The action is brought to recover, as Plaintiff alleges in his complaint, surplus money, and the complaint does not show that there is any surplus money. The complaint describes the note and states the rate of interest, and from such statement it appears that $3,394 was due Appellant on the 29th of August, 1859, when he only bid $2,325, $944 less than the amount actually due him at that time.

*Second.*—The five per cent per month contracted to be paid by Respondent, is legal interest, liquidated and stipulated damages and not a penalty. *Minn. Compiled Statutes,* 376; *Chap.* 30, *Sec.* 1; *Brewster vs. Wakefield, U. S. S. C. Dec. T.* 1859; 2 *Stark Evi.* 852, 853, *and notes H. and J. and cases there cited;* 1 *Mad. Chan.* 26, 28; 3 *Black. Com.* 433, *Ib.* 26; *Jasmain's Jon. by Sweet, vol.* 5, *page* 396; *Coate on Mort.* 533; 13 *Eng. C. L. Rep.,* 147; 2 *California R.* 597; 3 *Iowa R.* 244; 1 *Scammon R.* 2 *and* 3; 1 *Minn.* 352; 2 *Minn. R.* 323, 350; *Ill. R. in* 1 *Scamm.* 137.

*Third.*—If the five per cent. per month is a penalty, it is a penalty voluntarily paid by Respondent to Appellant, and cannot be recovered. Respondent should have enjoined the sale, and called Appellant into Court and fixed the damages if he did not wish to pay the whole amount of the penalty, and not having done so, he is estopped. *Cage vs. Russell,* 2 *Venti* 352; *Descartel vs. Dennet,* 9 *Mad.* 22; *Davis vs. Wise,* 12 *Ves.* 475; *Wadeson vs. Colecraft,* 10 *Ves.* 67; *Hill vs. Barclay,* 18 *Ves.* 63; *Sanders vs. Pope,* 12 *Ves.* 291; *Wafer vs. Mascate,* 9 *Mad.* 112 *and* 113. 1 *Mad. Chan.* 27; 1 *Br. C. C.* 413; *Kiel vs. Atkinson,* 2 *Camp.* 682; 3 *Stark.* 287; *Lansing vs. Eddy,* 1 *J. C. R.* 50; *Baker vs. Elkins,* 1 *J. C. R.* 465; 2 *J. C. R., Reguen vs. Governor on appeal;* 1 *John. Cases* 436, *Tillon vs. Shepston,* 5 *J. C. R.* 260; *Van Alst vs. Hunter,* 5 *J. C. R.* 122, 146; 2 *Stark.* 92; *Walkens vs. Ames,* 2 *Con.* 428; 9 *J. R.* 232; 13 *Ird.* 187; 9 *J.* 244; 2 *Ch. cases* 95; 3 *Atkins* 273; *Colt vs. Scott, Mich. T. cited in Halls Law Jour-*

*nal* 305; 1 *Tidd Pr.* 482; 5 *Munf.* 495, *May vs. Judah; Rockway vs. Clark*, 6 *Hammond* 50; 3 *vol. Am. Chan. Digest*, 216, 217; *and in Usury* 48 *to* 53.

*Fourth.*—If the five per cent. is a penalty, the Court cannot grant any relief in this action, nor in any other, for it is a penalty paid, and Respondent's recovery will not place Appellant in the same situation he would be in if Respondent had not violated his contract. 1 *Mad. Ch.* 26, 28, *and* 2 *Stark. Ev.* 852, 853, *and notes;* 2 *John. C. R.* 526.

Points and authorities of Respondent.

*First.*—The complaint shows that there is a sum of money in the hands of the Defendant which rightfully belongs to the Plaintiff. *See Mason, Craig et al., Plaintiff's in Error vs. Callendar, Flint & Co.*, 2 *Minn. R.* 350. *See also, Marston vs. Talcott*, 3 *Minn.* 339.

*Second.*—The following propositions are well supported by authorities. An action of assumpsit will lie to recover money to which the Plaintiff is entitled, and which in justice and equity, when no rule of policy or strict law prevents it, the Defendant ought to refund to the Plaintiff, and which he cannot with a good conscience retain, on a count for money had and received. 6 *S. and R.* (*Pa.*) 369; 10 *S. and R.* 219 ; 1 *Dall.* (*Pa.*) 148 ; 2 *Dall.* 154; 3 *J. J. Marsh* 175; 1 *Harr.* 449; 6 *Wend.* 290 ; 13 *Wend.* 488 ; *Addis on Contracts*, 230.

Bank notes or any other property received as *money* will be considered for this purpose as money. 17 *Mass.* 560 ; 3 *Mass.* 405 ; 14 *Mass.* 122; *Brayton* ( *Vt.*) 24 ; 7 *Cowen* 622 ; 4 *Pick.* 74. *See* 9 *S. and R.* (*Pa.*) 11.

No priority of contract between the parties is required in order to support this action, except that which results from the fact of one man's having the money of another, which he cannot consistently retain. 17 *Mass.* 563, 579 ; *See* 2 *Dall.* (*Pa.*) 54; *Mart. & Yerg*, (*Tenn.*) 221; 5 *Conn.* 71 ; *See* 18 *Chitty's Plea.* 87 ; *same* 305; 2 *Pick.* 243–8; 2 *Denio* 91, *Buel vs. Boughton* ; 13 *Wend.* 488, *Eddy vs. Smith.*

SANFORD & BEVERIDGE, and NEWELL, Counsel for Appellant.

AMES, SHERBURNE & CLARK, Counsel for Respondent.

*By the Court.*—FLANDRAU, J.   The following facts are disclosed by the complaint : That on the 25th day of September, 1856, Whitney executed and delivered his promissory note to Bidwell for the sum of $1,360, payable in one year from date, with interest after maturity at the rate of five per cent. per month.   That to secure the payment of this note, Whitney and his wife executed and delivered a mortgage to Bidwell on certain lands in the County of Hennepin.   That the mortgage contained a power of sale, and that Bidwell, on the 29th day of August, 1859, after giving " due notice as required by law," caused said land to be sold " in due form of law," and became himself the purchaser, he having bid the sum of $2,325.   That the sum so bid by Bidwell was $781.92 more than the amount due upon the note and mortgage, and that the Plaintiff has demanded such surplus of the Defendant, which has been refused. ᐧ The complaint also shows that the sale was made by the Sheriff of Hennepin county.   The relief demanded is a recovery of the amount bid beyond what the Plaintiff claims to be due on the note and mortgage.   This action is for money had and received to the use of the Plaintiff.

A demurrer was interposed to the complaint on the ground that no cause of action was made against the Defendant, because the sale was in all respects regular and the amount bid by the Defendant was less than the amount due on the mortgage, and the surplus money, if any, was in the hands of the Sheriff of Hennepin county, and not in the hands of the Defendant.

It is quite unnecessary to notice the latter objection, as we think the action can not be maintained against either the Sheriff or the Defendant Bidwell.

The theory of this case is this ; that the stipulation in the note to pay interest at the rate of five per cent. per month after the maturity of the same, is in the nature of a penalty inserted for the purpose of securing the punctual payment of the principal at maturity, and should not be enforced against the maker of the note.   That the note must be treated as if it did not contain any such stipulation, and that under no circumstances can more than the principal sum with damages at seven per cent. per annum after maturity and breach, be collected upon it, and that the Defendant having bid a sum

beyond that amount, although less than the sum due, according to the five per cent. clause in the note, he must be regarded as holding the surplus to the use of the mortgagor, and that this action can be maintained to recover it. In support of this doctrine we are cited to the case of *Mason, Craig, et al. vs. Callender, Flint & Co.*, 2 *Minn. R.* 350, and the case of *Marston vs. Talcot*, 3 *Minn.* 339.

As there seems from the present citation of these cases, to be a fundamental misapprehension concerning them, and what is decided by them, I will briefly review them and show their entire inapplicability to the case at bar.

The case of *Mason, Craig et al. vs. Calender, Flint & Co.*, was an action at law upon a promissory note for one hundred and fifty-one dollars and fifty cents, payable in ninety days with interest at the rate of three per cent. per month, and after maturity at the rate of five per cent. per month upon principal and interest. The Defendants appeared in the suit, and as they had no defence to the principal sum, simply objected to the recovery against them of the compound interest which they had stipulated to pay, and also of the increased rate of interest after maturity, on the ground that it was in the nature of a penalty inserted merely to secure the payment of the principal sum punctually at maturity. Now this was purely an equitable defence which the Defendants were permitted to interpose to the suit at law by virtue of the act of the legislature of 1853. *Compiled Statutes p.* 480. Had this Statute not permitted them to assert an equitable objection to the claim made in this action for these several amounts, they would have had no redress whatever in that suit, but would have been compelled to resort to a Court of Chancery, filed their bill, obtained an injunction restraining the suit at law until that Court could have decided upon their equities, and declared the five per cent. clause in the note a penalty, and the compound interest clause unconscionable, and granted appropriate relief against their recovery. The Statute of 1853, however, allowing equitable defences to be made in actions purely legal in their nature, the Defendants were permitted to obtain the relief directly by way of objection to the assessment of the damages in the action upon the note. The relief

granted in that case, and the only questions decided were, that the objections made by the Defendants to the recovery of the five per cent. after maturity, and the compound interest stipulated for, were well taken, and that the equitable power of the Court would relieve against them. Nothing new was determined by this case that I am aware of. The authorities cited in support of the positions taken by the Court on these points show clearly that such has been the doctrine in equity for centuries. Relief against penalties, forfeitures, and unconscionable agreements (among which latter compound interest is included) forms, and has always formed one of the most extensive branches of equitable jurisdiction, and whenever that arm of the Courts of this State is properly invoked in such cases, I have no doubt its compassionate aid will always be extended to relieve the applicant.

The case of *Marston vs. Talcot* was simply an affirmance of the points decided in *Mason, Craig et al. vs. Calender, Flint & Co.*, with the exception of one, which was the measure of damages adopted by the former, on the breach of money contracts. It was quite evident that we had adopted an erroneous principle as the basis of our decision upon that point, and we very properly improved the first opportunity to correct the mistake, it being of a nature which seriously affected substantial rights.

The idea seems to have obtained, since these decisions, that a party who executes an instrument containing such penal or unconscionable stipulations as were inserted in the notes upon which those actions were brought, need give himself no farther concern about them, but may treat them as void in all places and at all times. That if he is sued upon them at law, he need not defend himself, but the Court is bound to interfere in his behalf, make his defence for him, and see to it that no judgment is recovered against him beyond the least amount to which a court of equity could by a full exercise of its powers reduce the Plaintiff's right of recovery. That if a mortgage to secure such an instrument is sought to be foreclosed in chancery, there is no necessity of diligence on the part of the mortgagor in asserting his rights in this respect, but the same watchful solicitude must be exercised by the Court, and no

more must be assessed upon the mortgage than the application of the strictest equitable rules would allow.  That if the mortgagee seeks to enforce his mortgage by an act *in pais* under the Statute without the intervention of a Court at all, then the guardianship of the mortgagor's rights must be assumed by the mortgagee, and he must see to it that he is governed in his proceedings by the most merciful rules of the courts of equity, the least departure from which will subject him to an action at law for money had and received to the mortgagor's use.  This is clearly the logical consequence of the case at bar if it can be maintained.  If the Plaintiff's theory is correct, then I see very little use of the Court possessing any equitable powers; he would never, in a case like the present, invoke its aid to protect himself against the enforcement of penalties against him, but entrust his equities all to the tender care of his creditor in whose power he has placed himself, and who stands ready to fleece him of the last cent "nominated in the bond."  It is simply because there is no redress at law against such exactions that a Court of equity interferes when called upon, and relieves unfortunate debtors who have incurred penalties and forfeitures by their own acts, and against whom the creditor is about to enforce them.  To expect the relief at the hands of creditors without the intervention of the Court, is in most instances, to make Chancellors of Shylocks.

In illustration of the necessity of a party asserting his rights in all legal proceedings to prevent their being waived; suppose that the Defendants in the case of *Mason, Craig et al. vs. Calendar, Flint & Co.*, had slept on their rights when they were sued, and made no objection to the assessment of damages against them for the full amount of the penal clause in the note, and the compound interest, and the judgment had passed against them for these items, can any one seriously doubt that such judgment would have been regular, and could not have been impeached collaterally, and that the only remedy the Defendant would have had, would have been to have applied to the court in which the judgment was rendered for relief under *Section 94 of Compiled Statutes on page* 544, which authorizes the court to relieve a party from a judgment taken against him through his mistake, inadvertance, surprise or

excusable neglect, if the application is made within one year after notice of the judgment having been entered? And now let us suppose that they had made such application, would it have been sufficient simply to point out to the court that such amounts had been included in the judgment, and demand that they be stricken out? Clearly not. The answer would have been, why did you not make this objection at the time you were sued? Then you had an opportunity to confine the Plaintiff in his recovery to what he was entitled to, and as you did not interpose any objection, you must show some mistake, inadvertance, surprise, or excusable neglect to account for your failure to object there, or the court will hold your neglect inexcusable and refuse you relief here. The Statute in providing thus, only declares what the law was before its passage. At one time the practice was to open a judgment entered for want of an answer or plea, upon the Defendant showing that he had a meritorious defence, and paying all costs ; other conditions were often imposed, such as pleading at once, taking short notice of trial, stipulating not to plead. the Statute of limitations, etc., but the better and more recent practice has been not to open a judgment unless the default upon which it was entered is well excused. *Johnson vs. Clark & Clark*, 6 *Wend.* 517. Whatever the law was before, there can be no doubt that since the Statute, a judgment cannot be opened unless the default is excused. We had occasion to put our interpretation upon this law in the case of *Hollinshead vs. Von Glahn*, decided at this term, where we held, that the fact that two decisions were standing in the Reports of this Court at the time the suit was brought, both holding that the measure of damages on a note after breach, was the rate of interest which the note drew before maturity, was a sufficient excuse for a Defendant not having interposed an objection to a similar recovery, and that when the Supreme Court of the United States had reversed one, and we had changed the rule decided in the other, the Defendant who had allowed a judgment to pass against him might well claim to have been surprised, and that he was entitled to relief.

Judgments are too solemn matters to be vacated without the strongest reasons exist to require it, and a mere excess of dam-

ages is regarded by the courts as among the least cogent. The policy of the law is to terminate litigation, and while it affords all suitors a full and fair opportunity to be heard on any point they may wish to contest, yet if they do not avail themselves of their rights at the proper time, their silence is generally construed into a waiver.

Had the Defendant in this case, Bidwell, foreclosed his mortgage by an action of chancery, there is no doubt but that the reasoning which I have entered into would all have applied to the Plaintiff Whitney, and he would be held to have assented to the decree by not raising the objection in the suit for the foreclosure, but it is contended that as the mortgagee foreclosed under the Statute by advertisement, there is a distinction, and that he cannot be held to be estopped because he had no opportunity to interpose his objection. We are clear that this distinction is not well taken, and that a foreclosure by advertisement stands upon exactly the same footing as a suit at law, or a foreclosure in chancery. I use these terms to designate different kinds of actions, although practically, now, they are all alike, being conducted in the same manner, and in the same court.

I find no case exactly like the one at bar, but many, arising upon the usury laws of other States, which are identical in principle, and present very much stronger reasons for relief than these cases of excessive damages.

In the State of New York they have the most stringent usury law. The penalty for contracting to receive more than the legal rate of interest is the forfeiture of principal and interest, and the actual taking of usurious interest is punishable as a misdemeanor.

In the case of *Fanning vs. Dunham*, 5 *John. Ch. R.* 122, Dunham had loaned large sums of money to Fanning in a manner which tainted the whole transaction with usury. On the 27th of April, 1812, Fanning gave to Dunham a bond for $100,000 with a warrant of attorney to confess judgment thereon to secure these usurious loans, and afterwards he gave him another bond for $30,000, and a mortgage to secure it executed by himself and wife. This mortgage contained a power to sell on default of payment. The consideration for

this bond and mortgage was also usurious.    Dunham entered judgment upon the warrant of attorney, and commenced to foreclose his mortgage by advertisement.

Fanning filed his bill in chancery setting out all these facts, and asking that Dunham be enjoined from proceeding at law on the mortgage, etc.    The court awarded a feigned issue to try the fact of the usury, and the jury found that there was usury, and the answer of the Defendant stated facts which were held to admit the usury.

Upon this state of things Chancellor Kent, after deciding that there was no doubt about the usury in the judgment and the mortgage, reviews the English and the New York cases quite fully, and shows that although formerly where a judgment by confession was tainted with usury, the law courts used to let a party in to plead the usury, by setting aside the warrant of attorney upon which the judgment was entered, yet the " embarrassments attending the subject and the difficulty of applying a legal remedy consistently with the rules of law," have changed the rule in those courts, and parties are now turned over to equity for their relief.    He then proceeds to show what relief equity can grant in such cases.

In examining this case it should be borne in mind that it was before the Chancellor with the usury apparent upon the record; that is, the usury in the judgment and mortgage were admitted by the suit in which relief was sought against them, which made it a much stronger case than the one at bar, as it was an agreement contrary to an express Statute.

The Chancellor says :    " With respect to the relief that can be afforded here (he is now speaking of the judgment), I take the rule to be, that a Plaintiff who comes to a Court of Equity for relief against a judgment at law, or other legal security on the ground of usury, cannot be relieved except upon the reasonable terms of paying to the Defendant what is really and *bona fide* due to him."

Further on he says: " It is perfectly immaterial in respect to the application of the principle to the case of the debtor who sues here whether the usury be confessed by the Defendant in his answer, or be made out by proof.    The Plaintiff must still consent to do what is just and equitable on his part,

or the court will not assist him, but leave him to make his defence at law as best he can."

He then quotes the language of *Lord Thurlow in Scott vs. Nesbit,* 2 *Bro.* 641, 2 *Cox* 183, as follows : " I take it to be an universal rule that if it be necessary for you to come into this court to displace a judgment at law, you must do it upon the equitable terms of paying the principal money really due with lawful interest. I have no idea of displacing a judgment upon any other terms."

The Chancellor then adds : " The equity cases speak one uniform language. I do not know of a case in which relief has ever been afforded to a Plaintiff seeking relief against usury by bill upon any other terms. It is the fundamental doctrine of the court." He quotes Lord *Hardwicke* and Lord *Eldon* to the same effect.

Having declared what the rule is in regard to granting relief against a judgment affected with usury, he declares that the same rule obtains exactly in relation to a mortgage which is being foreclosed by advertisement.

He says : " The same objection and difficulty," (referring to the fact that by refusing relief at law the Statute of usury is partly evaded) " occur in the case of a mortgage taken to secure an usurious loan with a power to sell annexed to it, by means of which the creditor forecloses his mortgage by an act *in pais* without calling upon any court to assist him. The debtor has no relief in that case but by applying to this court, and then he must comply with the terms of paying what was actually advanced. He deprives himself in that case by the power to sell, as he does in the other by his warrant of attorney to confess judgment, of an opportunity to appear in the character of Defendant and plead usury. These are cases in which the party by his own voluntary act deprives himself of his ability to inflict upon the creditor the loss of his entire debt."

In the case of *Eagleson vs. Shotwell,* 1 *John. Ch. R.* 536, which was decided prior to the case of *Fanning vs. Dunham,* Chancellor Kent applied the same rule to a case of a mortgage foreclosure by advertisement. In that case Eagleson gave a mortgage upon an usurious loan with a power to sell,

and after default the mortgagee proceeded to foreclose it by advertisement. The mortgagor's representatives, he having died, filed a bill in chancery, and prayed for an injunction to to stay the sale, etc. The Chancellor on a hearing of the case on the report of a master, decided that the transaction was usurious, and ordered that certain shares of stock which had been sold above their value as a condition to the loan be retransferred, and that the mortgagee might proceed with the sale for the amount which was fairly due on the mortgage.

From these cases it seems that when a party executes an instrument to which he has a good defence in whole or in part if he is prosecuted upon it by the ordinary action at law or in equity, and by his own act, he cuts off such defence, either by confessing a judgment, or giving a mortgage with a power to sell, then his only relief is by an application to the equitable side of the court. The law can afford him none. *Leges vigilantibus non dormientibus subveniunt.* It would have been a very simple proceeding to have commenced an action against the mortgagor, when he announced his intention through the notice to collect the whole amount, and prayed an injunction to stay the sale until the amount actually due could be ascertained, and had the mortgage cancelled for the balance, exactly as was done in the cases of *Eagleson vs. Shotwell*, and *Fanning vs. Dunham*, before cited, or perhaps even after the sale, where the mortgagee was the purchaser, on a sufficient excuse being made for the neglect, the court of equity would order the premises to be re-sold, and cancel the security to the extent of the excess beyond seven per cent. per annum. But under no possible circumstances can a party by his own act place himself in this position, and then maintain an action at law for money had and received against the mortgagor as long as the land sells for less than the whole amount of the securities.

I know the distinction will be urged that in cases of usury cited the defect was not patent upon the record, and in the case at bar it is. The answer is this; that a party who makes an usurious contract may stand up to it if he pleases, and suffer a judgment to be recovered against him or a mortgage to be foreclosed against him, even if the contract and record disclose the fact of the usury, and when once the judgment is entered,

or the mortgage foreclosed, he cannot treat it as void, or attack it collaterally, but it stands as good against him as any other judgment or foreclosure until relief is granted against it in equity. What relief a party can obtain in equity must depend entirely upon the condition of the parties, and the securities at the time the application is made, but in no case can any relief be granted against a mortgagee which will leave him in a worse position than he would be had the mortgagor fulfilled strictly on his part. In 1 *Maddock's Chancery, page* 32, the rule is laid down thus : " Relief, however, in cases of penalties is dispensed only where the court can do it with safety to the other party ; for it seems if it cannot put him in as good a position as if the agreement had been performed, the court will not relieve. It will only relieve where *the thing may be done afterwards, or a compensation made for it.* But unless a full compensation can be given so as to put the party precisely in the same situation, a court of equity will not interfere ; for such a jurisdiction would be arbitrary." In support of this he cites the following authorities, some of which I have had access to, and some not; but a proposition so manifestly just needs but little outside of reason to sustain it. *Rose vs. Rose, Ambl.* 332 ; 1 *Chan. Cas.* 24, *Cage vs. Russell;* 2 *Ventr.* 352, *Descarlotte vs. Dennet,* 9 *Mad.* 22; *Northcote vs. Duke,* 2 *Eden* 321; *Davis vs. West,* 12 *Ves.* 475 ; *Wudman vs. Calcraft,* 10 *Ves.* 97; *Hill & Barclay,* 18 *Ves.* 63; 12 *Ves.* 291; 9 *Mad.* 112, 113. The references to " Ves." should be *Ves. Jr. Story's Equity Jurisprudence, Vol.* 2, *Sec.* 1314, lays down the same doctrine in these words : " In short the general principle now adopted is, that, whenever a penalty is inserted merely to secure the performance or enjoyment of a collateral object, the latter is considered as the principal intent of the instrument, and the penalty is deemed only as accessory, and therefore, as intended only to secure the due performance thereof, or the damages really incurred by the non-performance. In every such case the true test (generally, if not universally) by which to ascertain whether relief can or cannot be had in equity, is to consider whether compensation can be made or not. *If it cannot be made, then courts of equity will not interfere.*"

I think it will hardly be necessary to multiply authorities

upon this point. This being the ground upon which equity alone consents to interfere where parties have incurred penalties, the order of investigation to be adopted in any given case is necessarily as follows : *First,* Is the stipulation in the instrument in the nature of a penalty, or is it a matter of legitimate damages ? *Second,* Having determined it to be a penalty, then can the complainant have relief against its operation, and the Defendant be restored to exactly the same condition as if the Plaintiff had performed the contract and not incurred the penalty ? This enquiry must necessarily depend for its solution upon the condition of the case at the time the application is made. If nothing has transpired but the default of payment in a money bond, compensation can always be fully made by the payment of the principal and interest, and no harm is done to any one. If the security is a mortgage, and it has been foreclosed, and the land purchased by the mortgagee, and still remains in his hands,—in cases of very great hardships to the complainant, upon sufficient excuse being made for the neglect in allowing the foreclosure to be perfected, the court might order a re-sale ; or vacate the sale, and permit the mortgagor to take up the mortgage by paying the principal, interest and costs of the sale ; or allow him to redeem upon the same terms ; or apply any of the many modes of relief appropriate to a court of equity by which the right of the matter could be arrived at. But it is quite evident that such relief would in many cases involve an examination into the value of the land and many other questions, which could only take place upon the foundation of a proper bill and answer, setting forth all the equities of the parties. This is one of the principal reasons why the court cannot, in this action, look into any of the matters necessary to an equitable adjustment of the claims of the Plaintiff. The relief he demands is simply money, which could not possibly be granted unless it appeared fully that the Defendant had received in money, or its just equivalent, the full amount of his debt, interest and costs, which in such a case a court of equity could never regard as established by the fact of his bidding that amount at the sale under the mortgage. It would be a paradox in equity to grant a complainant relief against a penalty incurred by his

own act, upon the ground that his adversary was estopped by his act, from alleging the truth, which truth, when elicited, might be the very means of defeating all his equities. It is to avoid just such technical difficulties that equity with its comprehensive and penetrating powers, interferes, and by developing the whole truth, adjusts the differences of men upon the principles of natural justice. And while it rescues the struggling debtor from the ruin which his folly or his misfortunes have involved him in, it never does so at the sacrifice of the just rights of the creditor. He who seeks equity, must do equity, and we would be introducing a new principle into this court were we to grant equitable relief upon any other terms.

The demurrer is well taken to the complaint, and should have been sustained below. Judgment reversed.

*Emmett, Chief Justice, dissents from the foregoing, and will file a dissenting opinion.*