# JAMES H. CONKEY

## *vs.*

## WILLIAM H. DIKE.

The allegations of the complaint and which on motion for an injunction *pendente lite*, were not denied by the defendant, were, that plaintiff, defendant, and G. were partners. G. had personal charge of a bank in which the surplus funds of the firm were kept. Plaintiff requested G. to pay a mortgage which S. held on his property, procure a discharge, and charge the amount so paid to plaintiff on the books of the firm. G. with defendant's knowledge, assented to this request, and agreed so to do, and on the same day paid the amount of said mortgage to S., and charged it to plaintiff on the firm books. Instead of procuring said discharge, G. and defendant secretly caused the mortgage to be subsequently assigned to themselves, and G. assigned to defendant. *Held*, that this would be a fraud on plaintiff, as also would be defendant's proceeding to foreclose said mortgage by advertisement, and plaintiff therefore would be entitled, in a suit brought for an account, and that the mortgage and assignment be cancelled, and defendant compelled to deliver up the note and mortgage to plaintiff, and satisfy the mortgage of record, and for a perpetual injunction against foreclosing or enforcing the same, to an injunction on any further proceedings in said foreclosure, pending the suit, although notice of *lis pendens* should have been duly filed and recorded thereon.

Such foreclosure sale would constitute a cloud on plaintiff's title during the pendency of the suit; and is an act the commission of which is to be restrained by the terms of Gen. Stat. ch. 66, sec. 182, as well as on general principles of equity.

The doctrine in Montgomery vs. McEwen, 9 Minn. 107, that a cloud on a title is not an injury of that kind that an injunction should be granted to restrain, disapproved.

One John W. Griggs, plaintiff, and defendant, were partners in the business of manufacturing flour. Griggs kept the ac-

counts of the firm. Griggs and the defendant were also engaged in the banking business and Griggs had personal charge of the bank. In this bank the surplus funds of the manufacturing company were deposited. One Ira Spear held a mortgage on certain real estate belonging to the plaintiff. The plaintiff, as he alleges, requested Griggs to pay this mortgage; procure a discharge thereof, and charge the amount so paid to him on the books of the firm. Griggs, with defendant's knowledge, assented to this, and on the same day paid to Spear the amount of the mortgage, and charged the same to the plaintiff on the firm books; but instead of procuring the discharge, Griggs and the defendant subsequently and secretly procured the mortgage to be assigned to them, and Griggs afterwards assigned it to defendant and also transferred all his interest in said firm to him.

The defendant commenced proceedings to foreclose the said mortgage by advertisement, and the plaintiff commenced this action, praying for an accounting; that the said mortgage, be declared satisfied; the said assignments thereof adjudged void; the defendant perpetually restrained from foreclosing or enforcing the same, and in the meantime for a temporary injunction restraining said foreclosure proceedings. An application was made to the court, upon the complaint, for such temporary injunction, which was opposed by the defendant on affidavits. The court granted such injunction, and the defendant appeals from the order granting the same to this court. The material allegations of the complaint, and the material statements contained in the affidavits appear in the opinion of the court.

J. C. MORROW and BATCHELDER & BUCKHAM, for Appellant.

GORDON E. COLE, for Respondent.

Conkey v. Dike.

*By the Court.*—RIPLEY, CH. J.—The allegations of the complaint in this case, that the partnership books were kept by Griggs, and that since the dissolution of the firm in 1868, they have been under the entire control of the defendant; that on the 23d August, 1867, plaintiff requested said Griggs, who had personal charge of the bank in which the surplus funds of the firm were kept, to pay the mortgage in question to Spear, and procure a discharge thereof, and charge the amount thereof so paid by him to plaintiff on the books of the firm; that said Griggs with defendant's knowledge assented to said request, and agreed so to do, and accordingly did on said day pay the amount of said mortgage ($943.25) to said Spear, and charged the same to plaintiff in the books of the firm; that instead of procuring said discharge, Griggs and defendant secretly caused said mortgage to be subsequently assigned to themselves, are not denied by the defendant in his affidavit in opposition to the motion for a preliminary injunction. The affidavit states, indeed, that on said day said mortgage and mortgage debt were " sold, bargained and delivered by Spear to defendant and Griggs for $943.25, as this deponent is *informed and believes,* the negotiations for such transfer having been made on their behalf by said Griggs." This, however, only amounts to a statement that defendant is informed and believes that Spear sold, which will not do. *Grimstone vs. Carter,* 3 *Paige* 421; 3 *Daniels Ch. Pr.* 1787, *note* 2, *and cases cited.* So, of the statement that said plaintiff never requested " said Griggs, to the best of this deponent's knowledge and belief, to discharge said mortgage, or to procure a discharge thereof from said Spear, or any one else."

And though the defendant denies that he ever " assented to the payment of said mortgage and a discharge thereof by said Griggs to said Spear, as is alleged in the complaint," it is still to be taken as true, that plaintiff requested Griggs to pay his

debt to Spear for him, and get a discharge; that Griggs with defendant's knowledge agreed so to do, and with like knowledge of defendant, did pay the amount to Spear, and charged it to plaintiff on the firm books.

If plaintiff had previously drawn out more than his share of the profits, this would be an over-draft by plaintiff, for the repayment of which, his interest in the partnership property would be bound on an accounting.

If, therefore, Spear's statement be true, that on said day Griggs agreed with him for a sale and an assignment of the note and mortgage to himself and defendant, in consideration of said sum, and that he, in pursuance thereof, delivered said note and mortgage to Griggs, and subsequently executed and delivered an assignment thereof to Griggs and defendant, that transaction was a fraud upon the plaintiff on the part of Griggs and defendant, as would also be defendant's proceeding to foreclose said mortgage by advertisement, and plaintiff would be entitled to have said foreclosure stopped, and said mortgage discharged.

On general principles of equity jurisprudence, on filing a bill therefor, a preliminary injunction might be granted to restrain such sale, for sales may be restrained in all cases where they are inequitable, or may operate as a fraud on the rights and interests of third persons. 2 *Waterman's Eden on Injunctions p.* 339, *note* 1.

Accordingly, prior to the revision of the statutes, it seems to have been assumed, that where an accommodation indorser had been discharged from his liability on a judgment against the maker of the note and himself, by the creditor's releasing without his consent, a levy made on the maker's property sufficient in amount to discharge the debt, he was entitled to an injunction *pendente lite* to restrain a sale of his real estate on the execution. (*Moss vs. Pettengill,* 3 *Minn.* 2, 17.) And

Conkey v. Dike.

that, where one gave a note, with interest at 5 per cent. per month after due, secured by mortgage, and the mortgagee proceeded to foreclose by advertisement, claiming the stipulated amount, the mortgagor might have an injunction to stay the sale till the amount actually due could be ascertained. *Bidwell vs. Whitney*, 4 *Minn.* 76.

And now by Gen. Stat. ch. 66, sec. 182, a temporary injunction may be granted " when it appears by the complaint that the plaintiff is entitled to the relief demanded, and such relief or any part thereof consists in restraining the commission * * * of some act, the commission of which during the litigation, would produce injury to the plaintiff;" and the legislature, moreover, must have considered that a mortgage sale on foreclosure by advertisement, or an execution sale might be such an injurious act, for sec. 186 regulates the practice on applications for preliminary injunctions to restrain such sales.

Such injunctions are, however, as in all other cases of special injunctions, and by the force of the statute above cited, itself, to be granted, or refused, in the sound discretion of the court.   2 *Story's Equity Jur.* § 956, *a* 959, *b ;* 10 *Barb.* 223.

Regard should be had to the nature and extent of the injury which the plaintiff would suffer if the order should be withheld, and also to the consequences to the defendant should it be granted.   19 *Barb.* 371.

The defendant insists that the present is not a proper case for a preliminary injunction, because he says that a notice of *lis pendens*, filed and recorded as provided by law, [*Gen. Stat. ch.* 75, *sec.* 6; *Laws* 1869, *ch.* 75, *p.* 90,] will fully protect the plaintiff's interests during the pendency of the suit.

If this be so, the injunction was unnecessary, and should have been refused; but we do not think it is so.   Before any statute

requiring the filing of such notice was enacted in this state, a purchaser of property actually in litigation, *pendente lite*, though for value and *bona fide*, was nevertheless affected with notice of plaintiff's rights and equities. and as much bound by the law, as if he had actual notice. 1 *Story Eq.* § 454.

The statute makes the filing and recording the notice therein provided for necessary, before the pendency of the action can have that effect. It gives no greater effect to the pendency of an action, than it had before.

If the fact that the purchaser of property, *pendente lite*, took it with notice of plaintiff's rights, and would be bound by the decree, was a sufficient protection, courts of equity would have refused to interfere in all cases of such sales, instead of restraining them, as they are in the habit of doing, when a proper case is made therefor. It is evident, however, that a *lis pendens* cannot have the effect in all cases, which defendant claims for it, as for instance, in case of a vexatious sale, which is in no way bettered by the fact, that the purchaser knows that it is a violation of plaintiff's rights, and which accordingly will be restrained, *pendente lite*. 2 *Sto. Eq.* § 908.

It is not conceivable that the legislature should have thought it worth while to regulate by statute the practice on applications for preliminary injunctions of foreclosure by advertisement, if a *lis pendens* were in all such cases effectual to prevent injury to the plaintiff.

Where such sale will cast a cloud on his title, it will certainly be an injury, notwithstanding the filing and recording of a *lis pendens*. The sale in the present case will do so. The sheriff's certificate that the property has been sold, and that, unless redeemed, the purchaser's title will become absolute after the expiration of a year from the day of sale, goes upon record, thereby directly affecting the plaintiff's title; while the fact which renders such sale a fraud, and would, if established at

the trial of the suit, entitle plaintiff to a decree vacating the sale; cancelling the certificate, and purging the record, so that the title of the plaintiff shall stand thereon as clear as it did before the recording of such certificate, rests in *pais* only. A clearer case of a cloud upon title cannot be stated, and the injury, which will be created by such cloud, is one which equity will interfere by injunction to prevent *pendente lite*. *Scribner vs. Allen*, 12 *Minn.* 148; *Weller vs. City St. Paul*, 5 *Minn.* 95; *Scott vs. Onderdonk*, 4 *Kernan* 9.

It is true, that it is said in Montgomery vs. McEwen, 9 Minn. 103, p. 107, that "at most, such sale would only cast a cloud upon plaintiff's title, and as remarked in Armstrong vs. Sanford, 7 Minn. 53, the injury is not of that kind that a writ of injunction should be granted to restrain." But we cannot agree to this. In the first place, the remark in Armstrong vs. Sanford is, that a sale which violates a right of plaintiff, apparent *on record*, is not such an injury; which is true, but the reason why it is not, is that such a sale *is not* a cloud; for, what is meant by a cloud on plaintiff's title, is where the proceedings are valid on the face of the record, and extrinsic facts are necessary to be proved to establish their invalidity. *Scribner vs. Allen, supra p.* 151. So where the law makes a tax deed, *prima facie*, evidence of a valid tax title, in an action to vacate a tax sale, an injunction will be granted, *pendente lite*, to restrain the execution of such a deed, upon proper proof that it is threatened. 5 *Minn.* 95.

In the next case, the reason given by the court in Montgomery vs. McEwen for its proposition, viz.: that "if the sale, *prima facie*, conveyed any right in the property, the plaintiff would always have the evidence at hand to show its invalidity, since the decree cancelling the mortgage would be matter of record," overlooks the fact, that he would not have the decree at hand, *pendente lite*, and that the existence of the cloud,

*pendente lite*, is the very injury that the injunction will prevent. Nor do the cases to which the court refers, as recognizing the principle it lays down, seem to do so.

In Steele vs. Taylor, 1 Minn. 274, it is held that an execution purchaser, *pendente lite*, takes his title subject to the *lis pendens*, and is bound by the decree, which is as well settled as anything in equity jurisprudence can be, but has nothing to do with the effect of a cloud, *pendente lite*.

Hart vs. Marshall, 4 Minn. 294, states the same proposition, and the court say also, that where defendant's judgment is void for *reasons apparent on the record*, it is at a loss to see how a sale of the property upon an execution issued thereon would work irreparable injury to plaintiff; which is certainly correct, since, as stated in Armstrong vs. Sanford, such sale is no cloud whatever.

Goodrich vs. Moore, 2 Minn. 61, goes upon the principle that an injunction will be granted where a legal action can be maintained, only where irreparable injury would be done, unless the parties were entitled to more immediate relief than that which they would obtain at law; which of course is no authority for refusing to restrain the creation of a cloud on title.

In Osborn vs. Taylor, 5 Paige 515, the chancellor refused an injunction, *pendente lite*, to restrain the defendant, a judgment creditor of A, who, after judgment recovered against him, had obtained a discharge in insolvency, purchased the premises in question, and sold them to plaintiff, from selling them on execution issued on said judgment, the defendant claiming that the discharge was void for fraud, and that plaintiff bought the premises, with notice of that fact. The chancellor remarked, that the only possible injury which plaintiff could sustain, would be that a sale might cast a cloud on plaintiff's title during the pendency of the suit.

But it is very evident that it would not create a cloud on

plaintiff's title in the proper sense of the term, for the discharge being, *prima facie*, valid, the judgment, on the record, was no lien on the land, and the sale would apparently be entirely ineffectual to affect plaintiff's title, unless, and until a fraud and notice should be established on the hearing.

We are aware of no case in which it is not considered a good ground for interfering by injunction, *pendente lite*, that thereby the creation of a cloud, as herein above defined, will be prevented; and certainly, the creation of such a cloud pending the litigation, whether it last a year, a month, or a day, is an injury within the statute, and an injury of the kind known in equity as irreparable.

Take a practical view of the matter. Should this sale take place, would not plaintiff, in point of fact, be worse off, *practically*, than he was before? Could he go into the market and dispose of his property as readily as he could have done before the sale took place? Certainly not.

Probably no one ever heard of an injunction to restrain an *absolute sale*, on the ground of fraud, oppression, usury, or any other matter not apparent on the record, being refused because of the effect of a *lis pendens*.

That this sale would be subject to a year's redemption, makes no difference in principle. The fact, that even if plaintiff should be unable to make out his case by proof at the hearing, one who should buy from him, might redeem from the sale within the year, might render the property rather more marketable, than if an absolute sale had taken place, but whether it would or not, and if it would, to what extent, who can say?

The cloud depreciates the salable value of the property, at once, and this depreciation increases day by day while the suit goes on, and the redemption is running out

On the other hand, the injunction cannot injure defendant.

If he has a security, the postponement of the time at which it can be realized, will be compensated by the interest for which it stipulates. Order affirmed