<hr />

## MARY V. SEWALL

### *vs.*

## THE CITY OF ST. PAUL.

The notice of assessment, prescribed by *sec.* 25, *chap.* 32, *Sp. Laws* 1871, ("An act to authorize the city of St. Paul to levy assessments for local improvements," approved March 6, 1871,) is essential to a valid assessment.

The notice of the application for the confirmation of the assessment, required by *section* 26 of said act, is essential to the validity of the action of the city council, confirming such assessment.

Under a provision of said act, requiring that " notice shall be given by said board of commissioners by six days publication in the official paper of the city," a notice published six days, one of which was Sunday, is invalid.

The failure to give notices of assessment, and of the application for the confirmation of the assessment, is, in effect, a failure to obtain authority to proceed, and is jurisdictional. The omission is not an error or informality in the proceedings, which is cured by *sec.* 54, *chap.* 32, aforesaid.

When a city, acting within its general powers, contracts for the grading of a public street, and, in accordance with the conditions of the contract and the law prescribing the same, the work is done under the immediate supervision of certain officers whose official duty it is to superintend the work, and damages result, not from any negligence or wrong doing of the contractors, but, from the performance of the work in the manner required by the contract, the contractors are the agents of the city, and the city is liable for such damages.

A court of equity will grant relief against an assessment by a municipal

corporation, which, if valid, is a lien on real estate, when the proceedings constituting the assessment, although regular upon the face of the record, are void, and extrinsic evidence is required to show such invalidity.

When a court of equity has jurisdiction to cancel and set aside a lien upon real estate, it will grant all the relief in the premises, to which the plaintiff is entitled.

The defendant having caused deep excavations to be made in Rondo and Mackubin streets, for the purpose of grading those streets, and having laid an assessment, for such grading, upon certain lots of the plaintiff in front of which the excavations had been made, the plaintiff, claiming that the defendant's proceedings were in violation of law, brought this action to recover damages for injuries occasioned by the excavation to her said property, and to restrain the collection of the assessment.

The complaint alleges that the work of excavating was done by the firm of McCarty & Butlers, under a contract with the city, and sets out particularly the provisions of law violated by the defendant,—which will be found in the opinion. It also states that the defendant claims that the said pretended assessment has been legally made, and claims to have a lien upon plaintiff's said lots for the amount thereof, and is about to proceed to take judgment against the plaintiff for said pretended assessment, and to sell said lots on said judgment, to her great and irreparable injury ; that in and by the premises a cloud will be created upon the title to her said lots, and that she will be unable to sell or use them or any of them, unless the defendant is restrained from further proceeding in the assessment, and in the premises. The relief prayed, (besides a money judgment for the damages claimed,) is that defendant be restrained by an injunction *pendente lite,* to be made perpetual upon the final determination of the suit, from further proceedings for the collection of the assessment, and in the

Sewall v. City of St. Paul.

premises; that the pretended assessment and lien be declared void, and for general relief.

Certain of the issues were tried by a jury, and a verdict was rendered for plaintiff for $400, for which sum and costs judgment was entered June 19, 1873.    Other issues were tried by the court, and a decree was entered, August 19, 1873, declaring the lien and assessment void, and granting the injunction prayed for.  The defendant appeals " from the judgment," upon a bill of exception to the rulings of the court at the trial by jury.    These exceptions are fully stated in the opinion.

W. A. GORMAN, for Appellant.

JOHN B. & W. H. SANBORN, for Respondent.

*By the Court.*—MCMILLAN, CH. J.—This is an action in the nature of a suit in equity, in which the plaintiff, upon the facts stated in the complaint, seeks to obtain a judgment, enjoining the defendant from collecting an illegal assessment for a local improvement, to-wit: the grading of a street, and declaring such assessment void, and also awarding her damages for injury to her property, caused by an alleged trespass in grading such street.

The defendant having interposed an answer, the cause, upon certain of the issues, was tried by jury and resulted in a verdict for the plaintiff, upon which a judgment for damages and costs, in all $504.88, was entered on the 19th day of June, 1873, and upon the residue of the issues the cause was tried by the court without a jury, and resulted in a finding in favor of the plaintiff, whereupon, on the 19th day of August, 1873, it was adjudged and decreed by the court, that a perpetual injunction be granted, and that the pretended lien by virtue of said assessment, and the said assessment itself, be

VOL. XX.—65

declared null and void, and the said lots, and each of them, were adjudged and declared to be free and clear of all liens and incumbrances that have arisen, or may arise, by virtue thereof. A bill of exceptions having been duly settled and sealed, the defendant, on the first day of September, 1873, appealed from the judgment entered in said action.

We will dispose of the questions raised upon the trial, in the order they are presented in the bill of exceptions. " The plaintiff, to maintain the issues upon her part, proved the following facts: . 1. That the board of assessments gave no notice, by publication or otherwise, of the time or place of making the assessment for grading Rondo street. The defendant objected to such evidence, on the ground that no such notice was required by law. The court overruled the objection, and the defendant duly excepted, and the exception was allowed.

" 2. That notice was given in the official paper of said city of St. Paul, that said commissioners of assessment would apply to the common council of said city for a confirmation of this assessment for grading said Rondo street, on the 15th day of August, 1871; that said notice was published in said official paper, as follows, and not otherwise : on the 9th, 10th, 11th, 13th, 14th and 15th of August, 1871; that said 11th day of August, 1871, was Sunday ; that Sunday was one of the regular days of publication of said official newspaper, said paper being published every day in the week except Monday.

" And the court thereupon ruled that the statute requiring that said notice should be given by six days' publication in the official paper of the city, such notice must be published six legal days, and that such publication, as aforesaid, of such notice, was not a compliance with the statute, and was in-

valid; to which ruling of the court the defendant excepted, and the exception was allowed:"

The law in force at the time the proceedings in this case were had, was the act entitled "An act to authorize the city of St. Paul to levy assessments for local improvements," approved March 6th, 1871. The first and second sections of this act authorize the city to levy assessments for local improvements, among others, filling, grading, leveling streets, upon the property fronting upon such improvements, or upon property benefited by such improvements, without regard to a cash valuation. The expenses of any improvement authorized by the act, are to be defrayed, save as otherwise provided by the act, by a special assessment upon the real estate benefited by the improvement, to be levied in the manner prescribed in said act.

The act prescribes the appointment of a board of commissioners, to be known as the commissioners of assessment; the city clerk is secretary of the board, and the city engineer is to "act under the orders of the board, and do all surveying, make all plans and estimates, or any such like work required by said board."

Whenever an apparent majority of owners of property to be assessed for any improvement mentioned in section two of this act, shall petition the common council for such improvement, or whenever three-fourths of all the aldermen elect shall vote in favor thereof, the common council shall refer the same to the board of commissioners, above mentioned, who are to investigate the same, and if they determine that such improvement is necessary and proper, they are to report the same to the common council, accompanied with an estimate of the expense thereof. If they do not approve of such improvement, they are to report their reasons for their non-approval, and in either case the common council may order the

doing of such work, or making such public improvement, after having first obtained from said board an estimate of the expense thereof.   In all cases, the common council, after having obtained from said board an estimate of the expense, may make such changes in the proposed plan as may be petitioned for by any of the owners of the property to be assessed, or as the council may think proper.

Section six of the act provides : " Whenever such board of commissioners shall recommend the opening, straightening, widening, extending, or grading of any street, lane, alley, or highway in said city, they shall furnish the common council a plan or profile of the contemplated improvement, and shall also specially report whether, in their opinion, real estate to be assessed for said improvement can be found, benefited to the extent of the damages, costs, and expenses, necessary to be incurred thereby."

Sections 7 to 21, both inclusive, pertain to improvements, requiring " the appropriation or condemnation" of land or real estate.

Section 22 provides, that " All owners of real estate, or occupants of such real estate, in front of, adjacent to, or upon whose premises the common council shall order or direct any sidewalk to be laid, or gutter or curbing to be constructed, relaid or repaired, shall construct, relay or repair such sidewalk, gutter or curbing, at their own costs and charges, in the manner prescribed by said common council, and within such time as the common council may direct by publication in the official paper of the city.   If the work be not done in the manner prescribed by the common council, the council may forthwith proceed to assess the amount necessary to be assessed therefor, together with all costs, upon the real estate aforesaid, which assessments may be collected in the same

Sewall v. City of St. Paul.

manner as other special assessments are collected under the provisions of this act."

" Section 23. Whenever any order shall be passed by the common council, for filling, grading, leveling, paving, walling, graveling, macadamizing, planking, bridging or repairing of any street, lane, alley, or highway, or for the construction of underground sewers, or private drains, the subject shall be referred to the board of commissioners, who shall forthwith proceed to assess the amount directed by the common council to be assessed for that purpose, with the costs of the proceedings therein, upon the real estate by them deemed benefited by any such improvement, in proportion, as nearly as may be, to the benefit resulting thereto, in the manner hereinafter provided ;"—with a *proviso*, which does not affect the case under consideration.

· " Section 25.   Before proceeding to make an assessment for any improvement mentioned in section *twenty-two*, said board of commissioners shall give six days' notice by publication in the official paper of the city, of the time and place of their meeting for the purpose of making said assessment, in which notice they shall specify what such assessment is to be for, and the amount assessed.   All persons interested in any such assessments shall have the right to be present and be heard, either in person or by counsel, and the board of commissioners may, in their discretion, receive any legal evidence, and may adjourn, if necessary, from time to time.

" Section 26.   When the board of commissioners shall have completed their assessment, they shall sign and return the same, in like manner, and give like notice of the application to the common council for confirmation, as herein required in relation to assessment for the condemnation of real estate ; and all parties in interest shall have like rights, and the common council shall perform like duties, and have like power in

relation to such assessment, as are herein given in relation to assessments for the condemnation of real estate. When confirmed by the common council, said assessment shall be final and conclusive upon all parties interested therein, and shall be collected as in other cases, and no appeal shall lie in any case from the order of confirmation. If any assessment be annulled or set aside, the said board of commissioners shall proceed to make a new assessment, and shall return the same in like manner, and give like notices, as herein required in relation to the first."

The provision in relation to the return of the assessment of the board of commissioners, and the notice of the application to the common council for confirmation, in cases of the assessment for the condemnation of real estate, referred to in the section just quoted, are contained in section fifteen of the act, and are as follows: "Section 15. When completed, the board of commissioners shall cause the assessment-roll to be entered in a book, to be kept for that purpose in the office of the city clerk, and sign the same, and shall file a duplicate thereof in the office of the city comptroller. Notice shall be given by said board of commissioners, by six days' publication in the official paper of the city, of the filing of such assessment-roll, and [that] at the next regular meeting of the common council to be held after the expiration of such publication, they will apply to the common council for a confirmation of such assessment. Objections to said assessment may be heard before the common council; but all parties objecting shall file their objections in writing, in the office of the city clerk, at least one day prior to such meeting of the council, &c." Section 27 of the act provides: "Whenever any public improvement shall be ordered by the common council by virtue of this act, and the assessment for the same shall have been confirmed, and one-half of such special assessment

shall have been paid into the city treasury, the city clerk shall, by direction of the said council, advertise for proposals for doing said work; a plan and profile of the work to be done, accompanied with specifications for the doing of the same, being first placed on file in the office of the city clerk, which said plan, profile and specifications shall at all times be open for public inspection; which advertisement shall be continued for at least ten days in the official paper of the city, and shall state the work to be done." The remainder of the · section prescribes the manner in which bids shall be made, and when they shall be opened. The awarding of the contract, and the conditions of the same, &c., are prescribed by sections twenty-eight and twenty-nine, the latter of which prescribes, among other things, as follows: "Any person taking any contracts with the city, and who agree to be paid from special assessments, shall have no claim or lien upon the city, in any event, except from the collections of the special assessments made for the work contracted for; and no work to be paid for by special assessments, shall be let, except to a contractor or contractors who will so agree."

The language of section twenty-seven, above quoted, is too unambiguous to admit of any other construction than that the assessment for any public improvement ordered by the common council, for which an assessment is required by the act, must be confirmed, as one of the conditions precedent to the authority of the city to contract for the work of any such improvement. Unless, therefore, there was a valid assessment by the board of commissioners in this case, the common council had no authority to contract for the performance of the work in question.

The authority of municipalities to impose burdens of any character upon persons or property, is wholly statutory, and as its exercise may result in a divestiture and transfer of prop-

erty, it must be clearly given, and strictly pursued. 2 *Dillon, Mun. Cor.* §§ 605, 470, 610, *and cases cited in note* 3, *p.* 710, *and note* 1, *p.* 711; *Scammon vs. The City of Chicago,* 40 *Ill.* 146.

The section of the act, requiring notice of the time and place of meeting of the commissioners for the purpose of making the assessment, expressly secures to all the persons interested in such assessment, the right to be present and be heard, either in person or by counsel, before the board, and provides that the commissioners may, in their discretion, receive legal evidence. *Sp. Laws,* 1871, *chap.* 32, *sec.* 25.

The important questions of public interest and private rights to be heard and adjudicated by the board at this meeting, impart to it a character of vital importance in the proceedings authorized by the act. The great care taken to secure to all interested the right to be present and be heard before the board, and the terms in which the provision as to notice of the meeting is couched, requiring notice not only of the time and place of the meeting, but the specification of what such " assessment is to be for, and the amount assessed," leave no room to doubt that in the mind of the law maker, the right was of the utmost importance to the citizen, and that the notice required was essential to the authority of the board to hold such meeting, and make any valid assessment. The proof that no notice of the meeting had been given, was altogether right, and the objection to such proof was properly overruled. *Brewster vs. City of Newark,* 3 *Stockt. Chy.* 114; *State vs. City of Hudson,* 5 *Dutch.* 475; *State vs. City of Perth Amboy,* 5 *Dutch.* 259; *Myrick vs. LaCrosse,* 17 *Wis.* 442; *Cowan vs. W. Troy,* 43 *Barb.* 48; *City of Lowell vs. Wentworth,* 6 *Cush.* 221; *In the matter of the petition of Nath'l Ford,* 6 *Lansing,* 92.

The assessment when confirmed by the common council, is final and conclusive upon all parties interested therein, and no appeal lies in any case from the order of confirmation. *Sp.*

*Laws,* 1871, *chap.* 32, *sec.* 26.    The objections, if any are made, are to be in writing, and filed in the office of the city clerk, at least one day prior to the meeting of the council at which the hearing of the application for the confirmation of the assessment takes place.   *Sp. Laws,* 1871, *chap.* 32, *secs.* 26, 15. The notice of the application for the confirmation of the as· sessment, is no less important than the notice of the meeting for the assessment, and is essential to the validity of the action of the city council in confirming the assessment. (*State vs. Jersey City,* 3 *Dutch.* 536.)    The notice of confirmation required by section 26, is the same as that required in relation to the assessment for the condemnation of real estate, which, as prescribed by section 15 of the act, is as follows : " Notice shall be given by said board of commissioners by six days' publication in the official paper of the city," &c.    The notice in this case was published in the official paper for six days only, one of which days was Sunday, and was one of the regular days of publication of said official paper.    The statute means that the notice must be published on six different days, and these must be days upon which it was competent to make the publication.    Sunday is not a business day.    The publication upon that day, therefore, was invalid, and the notice required by the act not having been given, the confirmation of the assessment was void.    *Scammon vs. The City of Chicago,* 40 *Ill.* 147 ; *Jenks vs. The City of Chicago,* 48 *Ill.* 296 ; *Field vs. Park,* 20 *John.* 140 ;   *Gen. Stat. chap.* 100, *secs.* 19, 21.

The appellant contends, however, that no notice of the assessment for the purposes mentioned in section 23, was required.    We understand him to rely upon sections 22, 23 and 25, as sustaining the position.    He claims that the notice required by section 25, applies, by the terms of the section, only to improvements mentioned in section 22, and that by section 23, when any order is passed by the common council for an

improvement specified therein, the commissioners are to proceed forthwith and make the assessment. On the other hand, the respondent claims that there is a clerical error in section 25, that in the first clause of the section, " Before proceeding to make an assessment for any improvement mentioned in section twenty-two," the words " twenty-three" should be inserted instead of " twenty-two."

Section 23 expressly provides that when any order shall be passed by the common council, for any improvement specified therein, the subject shall be referred to the board of commissioners, who shall forthwith proceed to assess the amount directed by the common council to be assessed for that purpose," in the manner hereinafter provided.

The only manner of assessment afterward provided in the act, is that prescribed in sections 25, 26, 27, &c. This manner of assessment is appropriate, and adapted in all its details to the improvements mentioned in section 23, and unless these provisions are applicable to section 23, the object in passing the act will, at least in a great measure, be defeated.

We may not, under the rules of construction, be able to say that the reference in section 25, to " section twenty-two," was a clerical mistake, or that the omission to insert therein also section 23, was such mistake ; but we see no reason why the words, " in the manner hereinafter provided," in section 23, may not be held to refer to, and embrace the provisions relating to special assessments in the subsequent sections above mentioned, especially since it is necessary that such effect be given, in order to avoid a *casus omissus.*

Section fifty-four of the act under consideration is as follows : " No assessment of property, or charge for assessments thereon, shall be considered illegal on account of any irregularity or informality in the assessment rolls, or on account of the assessment rolls not being made, completed or

returned within the time required by law ;   *   *   *   and no error or informality in the proceedings of any of the officers entrusted with the levying and collection of special assessments, nor [not] affecting the substantial justice of the assessment itself, shall vitiate or in any way affect the assessments." *Sp. Laws* 1871, *chap.* 22, *sec.* 54, *p.* 216.

The appellant claims' that the errors complained of, do not affect the justice of the assessment itself, and, under the section quoted, cannot avail the plaintiff in this case.

This section applies only to *errors and informalities* in the proceedings. But the failure to give these notices is, in effect, a failure to obtain authority to proceed, and therefore jurisdictional: Certainly, it could not have been intended to give validity to acts which, for want of authority to perform them, were void. *Prindle vs. Campbell,* 9 *Minn.* 212.

The appellant claims that the contractors were not the agents of the city, that the city had no control over the persons employed on said work, and is not liable. It appears by the bill of exceptions, " That the grading of Rondo street was performed and done by McCarty & Butler, under a contract between them and the said city of Saint Paul, a plan and profile of said work having been placed on file in the office of the city clerk of said city, and proposals for doing said work having been first advertised by the city clerk of said city of Saint Paul. There was evidence tending to prove that said contractors, McCarty & Butler, did the excavation complained of on said Rondo street, under the immediate supervision of Mr. Curtice, then city surveyor of the said city of St. Paul, and of Aldermen Johnson and Taylor of the fourth ward of said city, who were then members of the common council of said city of Saint Paul ; that estimates of said work, while in progress, were sent into the common council by said city surveyor, and that said defendant, the city of Saint Paul, had paid said con-

tractors for a part of said excavation on Rondo street. Also that the plaintiff sustained a large amount of damages from the grading of said Rondo street, and the excavation thereof, and the removal of the earth therefrom by said McCarty & Butler, in pursuance of said contract.

" The plaintiff also introduced in evidence an ordinance of the city of St. Paul, passed October 9, 1869, of which the following is an extract, to-wit : Section 1. There shall be elected as provided by the city charter, a city surveyor, who shall be a practical engineer and surveyor. * * * Section 6. He shall superintend in person, and carefully watch, the improvement of all streets and sidewalks, sewers and culverts, and see that the same is being done in conformity to the contract, ordinances, and resolution authorizing the same."

It was within the general power of the city to contract for the grading of Rondo street. The terms of the contract were in accordance with the provisions of the act of the legislature, relating to " improvements " of this character, and, in accordance with the conditions of the contract, the work was done under the immediate supervision of the city surveyor, whose official duty it was to superintend that and similar works, and two members of the city council. So far as appears from the bill of exceptions, the damages to the plaintiff were not occasioned by any negligence or wrong doing on the part of the contractors who did the work, but arose from the performance of the work in the manner required by the contract. Under such circumstances, the contractors are the agents of the city, and the city is liable for the injury to the plaintiff, resulting from their acts. 2 *Dillon Mun. Corp.* sec. 769, *and cases cited in note* 1.

It is claimed by the appellant, that upon the facts of the case, it appears that the plaintiff had a complete remedy at

law, and that a court of equity has no jurisdiction to grant the relief sought for by the complaint and granted by the decree.

The general rule is, that a court of equity will not entertain an action by a party aggrieved, for relief against an illegal or erroneous assessment by a municipal corporation. To this rule there are three exceptions.

1. Where a multiplicity of actions will be avoided; 2. Where irreparable injury will be avoided; and, 3. Where the proceedings constituting the assessment are on their face valid, and extrinsic evidence is requisite to show their invalidity. *Scribner vs. Allen,* 12 *Minn.* 148; *The Minnesota Linseeu Oil Co. vs. Palmer, ante p.* 468. This case must fall within the third exception, if it is taken out of the general rule. We think it does come within the third exception. It appears upon the facts stated in the complaint, that no notice of the assessment was given, and that the notice given of the confirmation of the assessment was insufficient and invalid. Upon these two grounds, we have determined that the assessment is void. By the provisions of the act under which the assessment was made, the assessment is a lien upon the real estate of the plaintiff upon which it is imposed, which lien continues until the assessment is paid. *Sp. Laws,* 1871, *chap.* 32, *sec.* 34.

The act provides for the entry of judgment if the assessment remains unpaid, for the sale of the land, and, upon failure of the proper parties to redeem, for the conveyance thereof by deed to the purchaser. *Id. secs.* 33-49.

In all controversies and suits in relation to the right of the purchaser, his heirs or assigns, to the premises conveyed by the deed, it is *prima facie* evidence, among other things, " That the land or lot conveyed was subject to assessment at the time the same was advertised for sale, and had been listed and assessed in the time and manner required by law." *Id. sec.* 50.

Upon the execution and delivery of a deed under this pro-

vision of the act, the burden of proving a want of the notice of confirmation of the assessment, is placed upon the original owner of the land, and the grantee in the deed is relieved from the necessity of proving any of the steps preliminary to the deed.

It may be said, however, that the board of commissioners, in carrying out the provisions of the act, are required to keep a record of all their proceedings, in books to be kept for that purpose in the office of the city clerk, (*Id. sec.* 21,) and that the production of this record will render unnecessary any extrinsic evidence, upon the part of the original owner of the land, in order to avoid the deed. This may be so, as to the invalidity of the notice of confirmation of the assessment. But when no notice whatever of a proceeding has been given, the record would contain no affirmative evidence thereof, and the mere omission of the fact of notice would not rebut the presumption, created by the deed, that notice was given; parol proof of the fact, therefore, would be required.

It is claimed further by the appellant, that the plaintiff had the right to appear upon the hearing for judgment, and interpose the objection of want of notice. · *Id. sec.* 39.

It is true that this right is secured to the land owner, and it is also true that at the time of the commencement of this action, no judgment had been rendered for the assessment; and if no lien had existed prior to the judgment, there would, perhaps, have been no ground for relief in equity in behalf of the plaintiff. But as we have already seen, the assessment, when levied by the common council, is a lien upon the land, and apparently a valid lien, to remove which, by showing that it was invalid for want of notice of assessment, would require other evidence than that which the record affords. Conceding that the assessment could be set aside upon the application for judgment, still, until that time, the lien re-

mained an apparent cloud upon the plaintiff's title to the land, for the removal of which his only remedy was by application to a court of equity. The existence of the claim for any length of time was an injury to the plaintiff, to which she was not required to submit, and which a court of equity had jurisdiction to remove. *Conkey vs. Dike*, 17 *Minn.* 457.

Having obtained jurisdiction for this purpose, the court was authorized to grant all the relief in the premises to which the plaintiff showed herself entitled.

Judgment affirmed.